E. F. WALTON, Respondent, v. C. B. CHANNEL, J. M. STEELSMITH and A. E. LARSON, Appellants.

[204 Pac. 665.]

RICE, C. J.—A rehearing was granted in this case and the cause reargued at the present term.

I adhere to the views heretofore expressed by me in this case.

Dunn, J., concurs.

LEE, J., Specially Concurring.—In the able and instructive briefs and oral argument of appellant's counsel on the rehearing of this cause, they direct our attention to the language used in *Ponting v. Isaman,* 7 Ida. 581, 65 Pac. 434, wherein at page 581 of the Idaho Report (65 Pac. 435) it is said: ''The court thus found that the appellant was honest in the discharge of his duties and in making charges against the county. In the enactment of said sec. 7459 (C. S., sec. 8684) we do not believe it was the intention to visit the severe penalty provided by said section when the officer acts in perfect good faith, and under an honest conviction that he is acting within the law, or for an honest error of judgment when honestly acting under the advice of the legal adviser provided for him by law,'' and counsel very pertinently inquire if it is the intention of this court to now depart from the doctrine there announced. It must be conceded, as pointed out by Mr. Justice Quarles in the dissenting opinion in that case, that the rule as therein announced, when applied to the facts of that case, cannot be reconciled with a number of decisions of this court, both earlier and later than this pronouncement. (See *Rankin v.*

*Jauman,* 4 Ida. 53, 36 Pac. 502; *Rankin v. Jauman,* 4 Ida. 394, 39 Pac. 1111; *Ponting v. Isaman,* 7 Ida. 283, 62 Pac. 680; *Miller v. Smith,* 7 Ida. 204, 61 Pac. 824; *Robinson v. Huffaker,* 23 Ida. 173, 129 Pac. 334.)

In *Miller v. Smith, supra,* at page 213 in the Idaho Reports, this language is used: "The statute itself, R. S., sec. 7459 (C. S., sec. 8684), does not specifically require that fees shall be fraudulently, corruptly or wilfully charged and collected, to warrant the removal of the officer; nor does it declare that neglect of official duty shall be wilful or corrupt. The statute contemplates that when illegal fees are charged and collected, or when an officer has refused or neglected to perform official duties pertaining to his office, and those facts are properly shown to a court, the informer has made out his case. The proof of those facts is proof of the intent with which they were done, and such acts can only be excused by showing that they were done or not done by reason of a wrong construction of an obscure or doubtful statute, but cannot be excused by a plea of ignorance of the plain provisions of the law."

In *Robinson v. Huffaker, supra,* it is said: "It is the duty of a public officer to obey the law, and he cannot justify his acts in not doing so upon the ground that he does not believe it will be necessary to obey such law."

I understand that the majority opinion holds that an officer who is not subject to removal under the impeachment provisions of the constitution is subject to removal under C. S., sec. 8684, under either one of two conditions: (1) whenever he has been guilty of charging or collecting illegal fees for services rendered or to be rendered in his office (2) or has refused or neglected to perform official duties pertaining to his office, notwithstanding his honesty of purpose, and that this holding is in harmony with the earlier decisions, excepting possibly the *Ponting v. Isaman* case, *supra.* In the more recent case of *Archbold v. Huntington,* 34 Ida. 558, 201 Pac. 1041, in discussing the question of intent, it is said that this statute: "Does not

require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with 'intentionally,' 'designedly,' 'without lawful excuse,' and therefore not accidental.''

Not every infraction or departure from the strict letter of the law will subject an officer to removal under this statute, for the law does not concern itself with trifles, nor does it require a degree of efficiency and exactness in the performance of official duties that cannot be reasonably complied with in the exercise of ordinary care and diligence. But where there has been such a plain departure from the requirements of the statute as is shown in this case, the official cannot escape the consequences of his wrongful action by a claim that he acted in good faith, without any evil or corrupt motive. As stated in *Rankin v. Jauman, supra,* at page 65 of the Idaho Report, (36 Pac. 506): ''The right of the legislature to provide for the summary removal of incompetent or inefficient officers is no new doctrine . . . . it arises from the exigencies of government.''

With regard to the fiftieth or last cause of action, wherein it is charged that appellant failed to perform an official duty in not requiring the treasurer to give additional bonds from time to time, in such amount as should be fixed by the board upon its estimate of the probable amount of money coming into his hands, it appears that the commission was advised by reputable counsel that this provision of the statute was directory and not mandatory, and that it accepted and acted upon this advice. It also appears that under the plans adopted by the commissioners, it was arranged that all funds coming into the treasury should be kept in certain banks, which executed bonds for the protection of this money, resulting in a substantial saving to the district in not being required to procure additional bonds for its treasurer, imposing that burden upon the banks,

which assumed it for the purpose of having this money on deposit with them until it was used. While this is not a compliance with the statute, I am of the opinion that it having taken a bond, its failure to require additional bonds of its treasurer, under the facts and circumstances disclosed by the record in this case, would not be such an omission to perform an official duty as would render the commissioners subject to the penalty of this statute. Had the funds of the district been deposited with the treasurer without the requirement of additional bonds sufficient to protect the same, or had loss resulted through depositing this money in the banks, which were bonded for its safekeeping, such failure might have been malfeasance, but in my view it does not constitute such nonfeasance within the meaning of the statute as would render the commissioners subject to removal.

The failure of the board to audit and allow claims presented against the district, and the disbursement of more than a million dollars in the manner pointed out in the majority opinion, constitutes such a clear and unmistakable violation of the statute that to hold that public officers might escape the consequences of such action upon the ground that the method of payment prescribed by the statute was impractical, and that they had adopted a better system, and had acted in entire good faith in so doing, without consequent loss to the public, would be tantamount to repealing this statute, which is the province of the legislature and not of the courts. I therefore concur in the affirmance of the judgment of the court below.

BUDGE, J., Concurring Specially in Part and Dissenting in Part.—The preparation of the opinion in this case was first assigned to the writer, and therefore this opinion contains many of the facts now set out in the majority opinion.

This is one of three actions instituted by respondent under the provisions of C. S., sec. 8684, to remove from office the commissioners of Twin Falls Highway District and subject each to the statutory penalty. The three causes were con-

solidated for the purposes of trial and appeal, and a separate judgment rendered against each of the commissioners.

C. S., sec. 8684, provides that: "When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered or to be rendered in his office, or *has refused or neglected to perform the official duties pertaining to his office,* the court must cite the party charged to appear before the court . . . . and . . . . must proceed to hear, in a summary manner, the information and evidence offered in support of the same, . . . . and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 in favor of the informer, and such costs as are allowed in civil cases."

The information in this proceeding, which states fifty causes of action, is based upon the alleged refusal or neglect of appellant to perform official duties pertaining to his office as a highway commissioner. It is charged that appellant refused and neglected (Nos. 1 to 15) to make, file and publish certain reports for the years 1919, 1920 and 1921, as required by C. S., secs. 1517 and 1518; (Nos. 16 to 49) to consider and allow certain claims against the district before payment thereof; and (No. 50) to require the treasurer of the district to execute and file an increased or additional bond sufficient to cover the amount of money coming into his possession and 25 per cent thereof in addition thereto.

C. S., sec. 1517, provides that: "On or before the first day of February in each year, the highway board shall make a report of the condition of the work, construction, maintenance and repair of all the highways within the district; accompanied by a map or maps thereof, together with any other facts necessary for setting forth generally

the situation and condition of the highways within such district. Such reports shall be made in triplicate, and one of such reports shall be filed in the office of the highway board, one in the office of the department of public works, and one with the clerk of the board of county commissioners."

C. S., sec. 1518, is as follows: "On or before the first day of February of each year, the highway board shall make and file in its office a full, true and correct statement of the financial condition of such district on the first Monday of the preceding January, giving a statement of the liabilities and assets of the district on such first Monday of January; a copy of such statement shall be published in at least one issue of some newspaper published in the county."

The record discloses that a combined financial and road report, signed by the secretary, Stuart H. Taylor, and bearing the names of the members of the board, was made on February 1, 1919, and March 12, 1920, upon blanks furnished by the state highway engineer, and the financial report was published in the "Twin Falls News" on February 6, 1919, anl March 13, 1920, respectively; that a separate detailed financial report was also made on March 12, 1920, and on February 10, 1921, signed by Taylor as treasurer, and the latter report published in the "Twin Falls News" on March 8, 1921; that a road report accompanied by maps was made on March 19, 1921, signed by appellant as president of the board and by Taylor as secretary; that maps were not called for in the blank financial and road reports furnished by the state highway engineer, but that on March 19, 1921, road reports with proper maps were made and filed by the director of the district for the years 1919, 1920 and 1921; and that all of the above reports were made in triplicate, and one copy filed in the office of the highway board, one in the office of the department of public works, and one with the clerk of the board of county commissioners.

Respondent first contends that the failure of the board to make, sign and publish these reports individually, on the date and in the manner provided by the statute, renders each member of the board subject to removal from office and the statutory penalty, in the absence of any allegation that the acts complained of were knowingly, wilfully or corruptly performed.

The question then arises whether the members of the board were required to make, file or publish these reports personally.

C. S., sec. 1507, provides that: ". . . . Said board [the highway board] shall also have power to manage and conduct the business and affairs of the district; make and execute all necessary contracts; have an office and employ and appoint such agents, attorneys, officers and employees as may be required, and prescribe their duties and fix their compensation . . . . "

C. S., sec. 1511, provides that: "The grant of powers in this chapter contained to highway districts and to highway boards and the officers and agents thereof, shall be liberally construed as a broad and general grant of powers, to the end that the control and administration of such districts may be efficient; nor shall the enumeration of certain powers that would be implied without such enumeration be construed as a denial or exclusion of other implied powers necessary for the free and efficient exercise of the powers expressly granted."

Under the provisions of the above sections, we are of the opinion that it was within the power of the board to direct its secretary to make the reports required by C. S., secs. 1517 and 1518, and to subsequently ratify and confirm such reports, and we therefore hold that the reports so made were the reports of the board.

Having arrived at this conclusion, we are not called upon to consider or discuss any misfeasance or malfeasance of which the board may be guilty by reason of the fact that the reports were not made at the time required by the

statute, or were not accompanied by maps, or published before February 1st of each year, inasmuch as sec. 8684, *supra,* is aimed at nonfeasance rather than misfeasance or malfeasance on the part of public officers.

In *Corker v. Pence,* 12 Ida. 152, 85 Pac. 388, the board of equalization had failed completely in assessing the property of their county at its fair cash value, but it was held that the fact that they had met and acted was sufficient to clear them of the charge of nonfeasance in office, and the court stated that if they had acted corruptly they would be within the purview of Rev. Codes, sec. 7445 (now C. S., sec. 8670), rather than Rev. Codes, sec. 7459 (now C. S., sec. 8684).

In *Corker v. Cowen,* 30 Ida. 213, 164 Pac. 85, this court said: "It is contended at some length that the respondent failed, neglected and refused to perform her official duties, in that she failed to make two annual reports as required by law. But it is conceded that she did make the reports. Having done so, there was not a failure, neglect or refusal upon her part to perform her official duties in this respect, although the reports may not have been technically correct, and therefore she would not be subject to removal from office or the payment of the penalty prescribed under the provisions of sec. 7459, *supra*" (now C. S., sec. 8684).

In *People ex rel. Keyes v. Burnside,* 3 Lans. (N. Y.) 74, at 77, under a statute similar to sec. 8684, *supra,* certain railroad commissioners had been ousted from office upon a charge that they had refused and wilfully neglected to perform certain official duties pertaining to their office. The court in that case said: "The wilful neglect and refusal upon which the order was based was, that the commissioners had done an act in violation of their duty, and had been guilty of misfeasance in office, and was not upon the ground of the refusal to perform, or a wilful nonfeasance. In this, I think, that the county judge committed an error. In order to make out a case within the provisions of the section cited, there must be an absolute

refusal or a wilful neglect to perform some duty imposed by the act. The statute evidently was not intended to punish the commissioners for positive acts done by them in violation of law, but for contumacy, in refusing to obey the mandate of the law, and for wilfully and unlawfully neglecting to do what was required by the plain terms and import of the statute."

In the case of *Siebe v. Superior Court,* 114 Cal. 551, 46 Pac. 456, under a statute identical with C. S., sec. 8684, an assessor was accused of having assessed the property of the Market Street Railway Company at an amount far less than the actual cash value of the property of said corporation for the fiscal year, for the purpose and with the design of enabling said corporation to evade taxation for said year. The assessor was charged under that section with having refused or neglected to perform his official duties. In the course of its opinion the court says: "If the assessment was made with such purpose, it was not a 'refusal or neglect' to perform his official duties, but a 'wilful and corrupt misconduct in office,' for which he might have been presented by the grand jury, under the provisions of section 758 of the Penal Code."

See, also, *Collman v. Wanamaker,* 27 Ida. 342, 149 Pac. 292, and *McRoberts v. Hoar,* 28 Ida. 163, 152 Pac. 1046.

Causes of action 16 to 49, inclusive, relate to the alleged failure or neglect of the board to allow certain labor pay-rolls and claims for material and freight prior to payment thereof.

It appears that the president and secretary issued drafts or warrants in payment of these claims, substantially as set out in the majority opinion, after which they were submitted to the board at its next regular session and allowed, and it is not contended that these claims were not proper charges against the district or were in excess of appropriations made therefor.

C. S., sec. 1504, provides that: "As soon as practicable after the organization of the first board of commissioners,

and thereafter when deemed expedient or necessary, such board shall designate a day and hour on which regular meetings shall be held and a place for the holding thereof . . . . Regular meetings shall be held at least quarterly. The minutes of all meetings must show what bills are submitted, considered, allowed or rejected. The secretary shall make a list of all bills presented, showing to whom payable, for what service or material, when and where used, amount claimed, allowed or disallowed. Such list shall be signed by the chairman and attested by the secretary."

C. S., sec. 1545, provides: "The secretary shall countersign all drafts and warrants on the district treasury, and no payment of district funds shall be made except on draft or warrant countersigned by him. He shall not countersign any such draft or warrant until he has found that payment has been legally authorized; that the money therefor has been duly appropriated and that such appropriation has not been exhausted."

The letter of the charge against the board so far as these claims is concerned is that it failed and neglected to allow them prior to payment thereof by the president and secretary, but the substance of the charge is that the president and secretary issued drafts or warrants in an illegal, attempted payment of the claims prior to the meeting of the board, at which the claims were duly presented to and allowed by the board.

It is stated in the majority opinion, and we think correctly so, that there are no provisions of the highway district law, other than secs. 1504 and 1545, *supra,* pertaining to the allowance or rejection of claims against a district and the payment thereof, but the construction of these two sections together only serves to further emphasize the fact that the president and secretary must not, and legally cannot, draw or issue warrants or drafts upon the treasurer until the bills to be paid thereby have been considered and allowed by the board. The law does not provide when bills shall be presented, audited or allowed, but only that they cannot be

paid until they have been audited and allowed, and in the face of these express provisions of the statute we are not disposed to hold that the claims were or could be paid, in law, prior to being audited and allowed by the board.

In the majority opinion it is also said: "The question arises . . . . what would it avail the district for the board to disallow a claim which had been paid? Moreover, to so hold would involve an essential contradiction in terms, for a bill which has been paid no longer exists as a claim against the district. The so-called action of the board after payment is a nullity, for there is nothing for it to act upon."

We are unable to see the force of this argument, for if the president and secretary are expressly prohibited from issuing drafts or warrants in payment of bills prior to the auditing and allowance thereof by the board, then the attempted payment by the issuance of such drafts or warrants is a *nullity,* nor does the fact that such drafts or warrants were actually paid by the treasurer constitute a payment of the bills by the district. The district might have enjoined the payment of these drafts or warrants, and would be entitled to recover any money paid out upon such void drafts or warrants, either from the payees or from the treasurer upon his bond, unless precluded from doing so by reason of the subsequent presentation and allowance of the bills by the board. The president and secretary are expressly forbidden by law to issue drafts or warrants until payment has been legally authorized, and unless the money therefor has been duly appropriated and such appropriation has not been exhausted. (Sec. 1545, *supra.*) The powers of the district can be exercised *only* by the highway board or by agents or officers acting under their authority. (C. S., sec. 1505.) It is the duty of the treasurer to pay over all moneys belonging to the district *on legally drawn warrants or orders.* (C. S., sec. 1544.)

"To hold that the board acted by considering claims and allowing them after they had been paid" might be "equivalent to destroying the vitality of the statute," but not more

so than to hold that the president and secretary could pay such claims, in contravention of the express provisions of the statute, prior to the auditing and allowance thereof by the board. The illegal action of the president and secretary in this respect could place no duty upon the board to meet before it did meet, nor render its subsequent action in meeting, considering and allowing claims properly presented to it, a nullity. It is nowhere contended that the board failed to meet when it should have met under the provisions of sec. 1504, *supra*, but the record affirmatively shows that they met as a board not only quarterly but monthly, when bills were submitted, considered and allowed. We are not prepared to subscribe to this new and strange doctrine that a board, meeting at regular times and places as provided by law, is guilty of nonfeasance for failure to anticipate some illegal action upon the part of its president and secretary prior to such meeting. The record does not contain a scintilla of evidence which shows or even tends to show that the members of the board, other than the president, signed drafts or warrants in payment of bills against the district. But even conceding that the drafts or warrants had been paid out of the district treasury, and that the action of the board in allowing the bills subsequently would be an idle thing in fact, still in law it would be valid, and in reality the only valid action which had been taken looking to the payment of the bills.

It may be urged that the members of the board had agreed upon the manner in which such bills were to be and in fact were handled, but this would not constitute nonfeasance, nor make the action of the board a nonfeasance when it finally did pass upon and allow the bills at a regular meeting. That the board did consider and pass upon these claims is not disputed and it is conceded that they acted. However illegal their action may have been, so long as they did not refuse or neglect to act they are not guilty of nonfeasance within the letter or spirit of sec. 8684, *supra*. Had they refused or neglected to act they would have been guilty

of nonfeasance. They may be guilty of misfeasance, in that they did not do a lawful act in a proper manner—omitting to do it as it should be done—or they may be guilty of malfeasance in the doing of an act wholly wrongful and unlawful (*Coite v. Lynes*, 33 Conn. 109), yet having acted they would not be guilty of nonfeasance. If they are guilty of misfeasance or malfeasance, they are entitled to a jury trial—not to summary removal in the manner sought in this action—and this constitutional right should not be denied them.

It further appears that upon assuming the duties of his office, the treasurer executed and filed with the board a bond for $5,000, and that this bond was not increased when the district came into possession of funds greatly exceeding the amount of the bond. Money derived from the sale of the district bonds was remitted by the purchasers to two of the principal banks of Twin Falls, and was subsequently distributed by order of the board to various banks throughout the district. These banks all executed bonds to guarantee the repayment of funds deposited with them, and money was withdrawn from these banks only upon warrants or checks signed by appellant as president and Taylor as secretary. The treasurer never had the actual custody of the money. The board considered the matter of increasing the treasurer's bond and upon advice of their attorney to the effect that the provisions of C. S., sec. 1504, relating thereto, were directory and not mandatory, concluded that the funds were amply protected and that it would be unnecessary to incur the expenditure of some five or six thousand dollars for premiums for an additional bond sufficient to cover the probable amount of money coming into the possession of the treasurer and 25 per cent thereof in addition thereto.

Appellant is not charged with having acted knowingly, wilfully, corruptly or in bad faith, nor does the evidence tend to show that appellant or the board acted other than in good faith and under an honest conviction that they

were acting within the law and for the best interests of the district. The failure of the board and of appellant as a member thereof to require an additional bond of the treasurer was at its worst the inability of the board or its members to correctly construe an abstract and doubtful statute, as construed by a majority of this court for the first time, and in following the construction placed upon the statute by eminent counsel furnished the board under the provisions of the act.

As was said by this court in *Ponting v. Isaman,* 7 Ida. 581, 65 Pac. 434: ''The whole transaction must be considered, and if his acts show that he acted honestly, and without intent to defraud his county, and especially when he sought honestly the opinion of the legal adviser provided by law for him, we do not believe that it was the intent of the legislature, in enacting said section 7459 (now C. S., sec. 8684), to inflict on him the stigma and severe penalty of ouster from his office and the payment of a fine of $500.''

To the same effect, see *Triplett v. Munter,* 50 Cal. 644, and *Smith v. Ling,* 68 Cal. 324, 9 Pac. 171.

The judgment of the trial court should be reversed and the cause remanded, with instructions to set aside and vacate the judgment and dismiss the action herein.

McCarthy, J., concurs.