(No. 4915. April 13, 1928.)

A. CORNELL, Respondent, v. OSCAR Y. MASON, Appellant.

[268 Pac. 8.]

D. L. Rhodes, S. Ben Dunlap and Rice & Bicknell, for Appellant.

Delana & Delana, for Respondent, file no brief.

BRINCK, Commissioner.—From a judgment of the district court removing him from office as sheriff of Canyon county, and assessing against him the statutory penalty of $500, together with costs, the defendant, Oscar Y. Mason, appeals. The action is brought under C. S., sec. 8684, as amended by Sess. Laws 1923, chap. 97, which is as follows:

"When an information in writing, verified by the oath of any person, is presented to a district court, alleging that any officer within the jurisdiction of the court has been guilty of wilfully charging and collecting illegal fees for services rendered or to be rendered in his office, or has knowingly, wilfully, and corruptly or in bad faith, refused or neglected to perform the official duties pertaining to his

office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the information was presented, and on that day or some other subsequent day, not more than 20 days from that on which the information was presented, must proceed to hear, in a summary manner, the information and evidence offered in support of the same, and the answer and evidence offered in support of the same, and the answer and evidence offered by the party informed against; and if on such hearing it appears that the charge is sustained, the court must enter a decree that the party informed against be deprived of his office, and must enter a judgment for $500 to be paid into the school fund, and a judgment in favor of the informer for such costs as are allowed in civil cases.''

The information charges eleven separate instances of alleged neglect to perform official duties, each of them being charged as committed knowingly, wilfully and corruptly, and separately charged as being committed knowingly, wilfully and in bad faith. As to five of the instances of neglect charged in the information, the court found that the defendant had neglected his duties in the respects charged, and that such acts were done knowingly, wilfully and in bad faith. As to the other charges, the court either expressly found for the defendant, or there was no evidence introduced. The neglect in all cases is alleged to consist in the failure of defendant to keep prisoners that had been committed to him under judgment or order of court.

The facts as to the various instances in which the court found against the defendant are in brief as follows:

One Clint Allen pleaded guilty in justice's court to a misdemeanor, and was sentenced to 30 days and committed to the appellant. After having served 18 days, he escaped from custody, and was recaptured by one of appellant's deputies almost a year later. At the direction of appellant, this prisoner was released immediately upon his recapture, appellant testifying that it was because the prisoner was a bad character, frequently in the jails, and offered to leave

the county and never return if he were released; and appellant considered it for the public benefit that the prisoner's promise be accepted. As a substantive charge upon which to base the judgment, the information is defective as to the Allen case, in failing to charge a commitment to appellant; but, as bearing upon the good faith of appellant, the finding is properly to be considered.

One Peggy Roberts was arrested and brought before a magistrate upon a conspiracy charge on February 18, 1926. The magistrate set the preliminary examination for February 20, 1926, and issued a commitment to defendant, commanding him only to receive her into his custody and have her before the magistrate on February 20, 1926. Appellant complied with the terms of this commitment in all respects, but at the adjournment of the magistrate's court on February 20th, the appellant was not present, and the magistrate continued the hearing until February 23d, and, without making any further order concerning her custody, permitted the prisoner to leave the courtroom unattended. She voluntarily appeared at the sheriff's office, and was admitted to the jail, and later, the same day, was released by the appellant, which release is the gravamen of the charge against appellant on this count. It is obvious that he had no authority at that time to detain her, and the evidence does not sustain the finding of the court on this charge.

E. Holloway, on December 24, 1925, was released from the Canyon county jail, after having served 44 days of a 60-day sentence. Though there is evidence in the record to the effect that the release was made by a deputy without appellant's knowledge and against his express direction, it appears that appellant made no effort to retake the prisoner for further imprisonment, though he was again apprehended on another charge.

Martin Barrenechea was, on November 27, 1925, sentenced by the district court in Canyon county to serve four months in the county jail, and to pay $200 fine, for possession of intoxicating liquor. He was received by the sheriff

on that date, and was released on March 11, 1926, having paid $190 of the fine assessed. The commutation of this sentence had not been ordered by the probate judge, and appellant's testimony that the release was acquiesced in by the prosecuting attorney is contradicted by the latter. It was one day short of the time when an order for such release would have been lawful.

J. A. Oberst, Bert Stivers and John Kuchta were sentenced by a justice of the peace in Nampa to each serve five days in the Canyon county jail, and to pay $5 costs, the fine, if not paid, to be served out in jail. Defendant received the prisoners at Nampa, and before he reached Caldwell with them released them. He testified he discovered they were infested with vermin, and that he let them out to work on the road, and left them unattended for three-quarters of an hour and on his return found they had disappeared.

Sixty-two errors are assigned. They may be grouped under four principal contentions, relating, as a rule, to each of the alleged instances of neglect.

 The first group of assignments raises the question of the validity of the judgments under which the prisoners were held. In all but the Barrenechea case the judgments consisted in nearly all cases of a mere recital of the court's action in sentencing the prisoner. In all cases the terms of the sentences were definite and certain, and it appeared from the entries in the justices' dockets that they were intended as final judgments. Appellant does not point out the particular defects he claims in these judgments, and while they were all quite informal, we do not discover such a defect in any of them as would render it void. The rule is general that the judgment of an inferior court is scrutinized as to form with less severity than are similar judgments of courts of general jurisdiction. Justices of the peace are not ordinarily trained in the learning of the law, and ordinarily mere deficiency in form does not invalidate their judgments, if it may be determined with reasonable certainty, from the form in which the judgments are en-

tered, what was meant, and that they are intended to be final judgments. (1 Freeman on Judgments, 8th ed., sec. 118.)

The second contention of appellant is that the evidence fails to show that the prisoners were properly committed to him. The form of commitment in each case, except the Barrenechea case, is merely a warrant of commitment reciting the prisoner's conviction of the crime, specifying it, and reciting the terms of the judgment, and commanding the sheriff to receive the prisoner in his custody and detain him until he is regularly discharged.

Appellant urges that the commitments are insufficient because of the absence of certified copies of the judgments. C. S., sec. 9257, provides, as to probate and justices' courts, that when a judgment of imprisonment is entered, a certified copy thereof must be delivered to the sheriff, marshal or other officer, which is a sufficient warrant for its execution. It was held in *Ex parte Dobson*, 31 Cal. 497, that under such a statute a commitment similar to those here involved and not accompanied by a certified copy of the judgment was wholly unauthorized by the statute, and had no validity as final process, and that a prisoner held under such process was entitled to discharge on *habeas corpus*. This seems to us a rather violent construction of the statute, which merely says that the certified copy of the judgment "is sufficient authority" for the imprisonment. The statute does not say that other process, such as the *mittimus* commonly used at common law, is insufficient. At most, the process would seem to be defective or irregular, rather than void. The magistrate should have delivered, and the sheriff had a right to demand, a certified copy of the judgment in each case; but it does not follow from this that, having received the prisoners under these commitments, he could, of his own motion, release them because of the defective form thereof. In fact, subsequently to the Dobson case, it was held in *Ex parte Gibson*, 31 Cal. 619, 91 Am. Dec. 546, that a prisoner held under a commitment such as was used here, was not entitled to discharge on *habeas corpus*,

it appearing in the sheriff's return that a valid judgment was entered, upon which the commitment was based, and a certified copy thereof being produced at the hearing. After judgment of conviction the imprisonment rests upon the judgment; the *mittimus* is only the evidence of authority to confine the prisoner, and a prisoner who has been properly and legally sentenced cannot be released on *habeas corpus* simply because there is an imperfection in what is commonly called the *mittimus*. (*Howard v. United States*, 75 Fed. 986, 34 L. R. A. 509; *In re Rogers*, 75 Vt. 329, 55 Atl. 661.) And it has been so held under statutes similar to our C. S., sec. 9257, where the commitment was in the common-law form and lacked a certified copy of the judgment. (*Ex parte Harry*, 6 Okl. Cr. 168, 117 Pac. 726; *Tanner v. Wiggins*, 54 Fla. 203, 14 Ann. Cas. 718, 45 So. 459; *Joyner v. Findley*, 199 Iowa, 782, 202 N. W. 831.)

The defendant would not have been justified in releasing any of these prisoners because of the irregular form of the commitment, if indeed they were held under valid judgments; and if he doubted the validity of the judgments, it was his duty, before receiving the prisoners, to demand certified copies thereof.

In none of the cases was insufficiency of the judgment or commitment claimed to be the ground for the unlawful releasing of the prisoners; but it is now urged only as a defense as a matter of law.

It is next urged that error was committed in the admission, by the court, of evidence concerning instances of alleged neglect of duty on the part of appellant, other than those charged in the information. Among these instances was that of permitting the prisoner Barrenechea, while serving his sentence, to go home unattended and stay overnight. Appellant had previously been fined by the United States district court for contempt in allowing a federal prisoner in his custody similar privileges, and of course knew the impropriety of his act with reference to Barrenechea. A person committed to the county jail for

trial or examination or upon conviction for a public offense must be confined in the jail until he is discharged. If he is permitted to go at large out of the jail, except by virtue of a legal order or process, it is an escape. (C. S., sec. 9418.) And a sheriff permitting such freedom to a prisoner, commits a wilful neglect of duty. (*State v. Welsh,* 109 Iowa, 19, 79 N. W. 369.) So reprehensible is the conduct of a sheriff in voluntarily permitting an escape that it is made a felony by C. S., sec. 8151. Since the ultimate question to be determined by the court was that of good faith or bad faith of the defendant, we think it clear that such evidence was properly admitted as bearing upon the question of intent or motive. (*State v. Maguire,* 31 Ida. 24, 169 Pac. 175; *State v. Schmitz,* 19 Ida. 566, 114 Pac. 1; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60; *State v. McGann,* 8 Ida. 40, 66 Pac. 823; 1 Wigmore on Evidence, sec. 300 et seq.)

 It is urged lastly that the evidence fails to support the findings of the court that the appellant's neglect was committed in bad faith. It cannot be said that the evidence is insufficient to support the findings in this respect. It appears from the evidence that various prisoners were released by appellant without compliance with C. S., sec. 9436, which provides as follows:

"Every person serving a jail sentence in a county jail in the state of Idaho who has a good record as a prisoner and who performs the tasks assigned him in an orderly and peaceable manner, shall upon the recommendation of the sheriff and prosecuting attorney be allowed five days off of each and every month of his sentence, by the probate judge."

The court found, upon sufficient evidence that early in 1925 the prosecuting attorney and the probate judge had each called this statute to the attention of the appellant, and had advised him to observe it and not to release prisoners, allowing them the statutory commutation, except upon the statutory recommendations and order. Sev-

eral prisoners having been released in violation of this statute on Christmas Eve, 1925, the prosecuting attorney, in January, 1926, served upon appellant written notice demanding that he thereafter allow no prisoners good time except in accordance with the statutory provisions; and it was after this that Barrenechea was released without the order of the probate judge, and, as the prosecuting attorney testified, without the latter's acquiescence. The evidence on this point is conflicting. In the matter of the release of Oberst, Stivers and Kuchta, although the appellant testifies that he did not expect the prisoners to escape when he left them upon the road unattended, the fact remains that a technical escape existed the moment he left them unattended, which in all probability would, and as a matter of fact did, develop into an actual escape; and the evidence is sufficient to support the view that, rather than administer the cleansing process necessary to put the prisoners in such condition that they could be incarcerated without contaminating the jail, appellant deliberately permitted their escape, thereby substituting his own judgment for a judgment that had been duly pronounced by a court of competent jurisdiction.

There have been no decisions of this court construing the statute for summary removal of officers, since its amendment in 1923 by the addition of the provisions that neglect or refusal to perform official duty must be committed wilfully, knowingly and corruptly or in bad faith, in order to incur the penalty of the statute. The amendment was doubtless enacted to settle the law in view of previous decisions of this court which did not appear entirely harmonious, and to adopt, as statutory, the more lenient rule which had been announced in some of these decisions. It had been said in *Ponting v. Isaman,* 7 Ida. 581, 65 Pac. 434, that in the enactment of the original statute, " . . . . We do not believe it was the intention to visit the severe penalty provided by said section when the officer acts in perfect good faith, and under an honest conviction that

he is acting within the law, or for an honest error of judgment when honestly acting under the advice of the legal adviser provided for him by law.''

In the special concurring opinion on rehearing in *Walton v. Channel*, 34 Ida. 544, 204 Pac. 665, it was pointed out that this language was not reconcilable with certain other decisions of this court; and the majority opinion in *Walton v. Channel* was explained as holding that an officer might be removed under the statute if he has refused or neglected to perform official duties pertaining to his office notwithstanding his honesty of purpose. In the Channel case, defendant had claimed advice of counsel as a defense, which was not considered a defense by two of the justices concurring in the majority opinion. The amendment to the statute followed at the next session of the legislature after the decision in *Walton v. Channel*.

We do not believe that the legislature, in enacting the amendment, intended to emasculate the statute nor to make the term ''in bad faith'' synonymous with ''corruptly.'' ''Corruptly'' necessarily involves some affirmative ulterior motive. ''Bad faith'' may involve merely the absence of a proper motive. In defining the word ''bad,'' Webster's New International Dictionary says, with reference to the words, ''bad, evil, ill, wicked''; ''Of these words, 'bad' alone is now used in a privative sense, frequently implying little more than the defect or absence of good qualities, or lack of value.''

A conscious and wilful neglect of duty, not prompted by any justifiable motive, must necessarily be committed in bad faith.

If the defendant in this case released prisoners, allowing them the good time he considered them entitled to, in violation of the statute requiring that such commutation be granted only upon the recommendation of himself and the prosecuting attorney, and the order of the probate judge, and if he did so in defiance of the express demand of the prosecuting attorney that his own authority in the matter be not ignored; or if he deliberately refused to incar-

cerate prisoners who had been committed to him under a valid judgment of a competent court, no sufficient justification appearing therefor, his conduct could well be found entirely contumacious. Emergencies may arise under which the conduct of an officer may be known to him to be in violation of the law, and even disobedient to a judgment of a court, and yet not be in bad faith justifying his summary removal from office under the statute. But every ministerial officer owes the duty of active obedience to a writ or process issued from a court having cognizance of the subject matter and the person; and it is not for him to obey or not, according to his judgment and pleasure. (*State v. Garrell*, 82 N. C. 580.) And where disobedience to such process is deliberate and defiant, it would seem to be in bad faith. If not, we do not know what acts could be "in bad faith" if not "corruptly" committed.

There is evidence in the record, which, if believed, would have perhaps sustained a finding of good faith in the Holloway case, and in the final release of Barrenechea, consisting of conversations which appellant testified were had between him and the prosecuting attorney. However, the findings of the trial judge on conflicting evidence will be sustained, if they are supported by any view of the evidence admitted; and we are unable to find any facts in the record with reference to the Oberst, Stivers and Kuchta matter which afford any excuse for the deliberate failure of the appellant to execute the judgment of the court.

Appellant also complains that, at the trial, the court admitted in evidence purported amendments to the justices' docket entries of the proceedings in the various cases involved, which amendments were prepared by counsel for plaintiff and by him caused to be entered by the justices *nunc pro tunc,* and consisting of formal judgments of convictions, such as would be proper in district court proceedings. These amendments, if it were proper to make them, which we need not here discuss, could not aid the

plaintiff's case, for the defendant's justification to hold the prisoners must rest upon the record existing at the time they were in his custody; but the error in admitting these amendments is of no consequence, since the judgments as they originally existed were sufficient, as above pointed out.

I recommend that the judgment of the trial court be affirmed.

The foregoing is approved as the opinion of the court and the judgment is affirmed.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.