NATIONAL LABOR RELATIONS BOARD
v. KNOXVILLE PUB. CO.

No. 8658.

Circuit Court of Appeals, Sixth Circuit.

Jan. 16, 1942.

Robert B. Watts, of Washington, D. C., and Philip G. Phillips, of Cincinnati, Ohio, for National Labor Relations Board.

Frantz, McConnell & Seymour, of Knoxville, Tenn., for Knoxville Pub. Co.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Petitioner, the National Labor Relations Board, asks that respondent, Knoxville Publishing Company, and its officers and agents, be adjudged in contempt for failure to comply with the consent decree entered by this court on November 8, 1940, wherein enforcement of an order of the Board with respect to respondent, Knoxville Publishing Company, was decreed. The decree inter alia required that respondent, Knoxville Publishing Company, cease and desist from discouraging membership of its employees in the Knoxville Newspaper Guild by discriminating against them in regard to hire or tenure of employment or any term or condition of employment and upon request to bargain collectively with the Knoxville Newspaper Guild as the exclusive representative of all respondent's employees who devote all, or a substantial portion, of their time to editorial or reportorial work, excluding clerical and supervisory employees, in respect to rates of pay, wages, hours and other conditions of employment.

The Board claims that respondent has failed to comply with, and has disobeyed and resisted compliance with, the part of the decree outlined and prays that respondent and Roy N. Lotspeich, Henry C. Page, Guy L. Smith, President, General Manager and Editor respectively, be adjudged in contempt. In support of its petition, the Board presents the affidavit of Albert B. Manola, President of the Knoxville Newspaper Guild. In opposition, the respondents have filed a joint and several verified answer, each denying that either has disobeyed or failed to comply with the decree and affirmatively alleging that the respondent, the Knoxville Publishing Company, has bargained in good faith with the Guild in respect to all matters provided in the decree.

The affidavit of Henry C. Page is filed in support of respondents' answer. The parties have stipulated that the cause may be submitted on the pleadings and the affidavits of Manola and Page respectively.

The present proceedings for enforcement of the court's decree are appropriate. Amalgamated Utility Workers v. Consolidated Edison Company of New York, 309 U.S. 261, 270, 60 S.Ct. 561, 84 L.Ed. 738. The burden of proof rests on petitioner and the action being one of original jurisdiction, it is necessary to state the ultimate facts gleaned from the agreed evidence.

Respondent, the Knoxville Publishing Company, is engaged in the business of publishing a newspaper in Knoxville, Tennessee. Complainant, the Knoxville Newspaper Guild, is a labor organization as defined under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and is an affiliate of the Congress of Industrial Organization. The employees of respondent in its editorial and reportorial departments have selected the Knoxville Newspaper Guild as their exclusive bargaining representative.

On November 8, 1940, Albert B. Manola and B. F. Henry, Jr., representing the Guild, and Henry C. Page and Guy L. Smith, representing respondent, conferred about the matters covered by the decree. Subsequently these parties and others, acting in a representative capacity, held ten conferences. Page requested that some of the employees of the respondent, the Knoxville Publishing Company, who were members of the Guild also attend the conferences, but there is nothing in the record showing any one of them did so, but members of the Guild from a rival newspaper attended some, but not all, of them. At the first conference, the Guild submitted a conventional bargaining contract, which it later amended eliminating some of the controversial features. The detailed provisions of the respective contracts were discussed by the conferees but, until the institution of these proceedings, no agreement had been reached. The failure of respondent to agree to certain provisions of the contracts is the basis of the lack of good faith here charged and, in order to decide correctly the present issues, it is necessary to examine them in some detail.

The preamble of the instrument had in it "This agreement, * * * hereinafter known as the Guild for itself and on behalf

of all the editorial employees of the publisher." Respondents insisted that the phrase "for itself" should be stricken as the contract was on behalf of respondent's employees and not for the benefit of the Guild. This objection is without merit.

Article XIII (3) of the agreement provided that the Unit Comptroller was to collect dues for the Guild on paydays in respondent's plant. At least to this extent, the Guild was a principal.

Article III excluded from the terms of the agreement the news editor and city editors. Respondent insisted that the exception also include the editor, assistant news editor, assistant city editors, society editor and confidential secretary. Manola, in his affidavit, states that the request for the inclusion of these additional employees was in bad faith, because the positions are not fixed ones and the respective duties are performed by respondent's employees indiscriminately. Page, in his affidavit, denies this and says these positions were filled by employees specially selected and there was no indiscriminate transfer. The burden of proof being on petitioner, and it having failed to carry it, we conclude there is no inference of bad faith on the part of respondent because of its insistence on this amendment.

Article IV (1) provided for a minimum wage schedule. Respondent wished to lower it. There is no inference to be drawn from this fact that respondent failed to bargain in good faith. Section (2) of Article IV provided that in applying the minimum wage scale to editorial classifications, other than an office boy, all regular employment so classified on any daily newspaper, news or feature syndicate or recognized news magazine should be included. Respondent rejected this entire paragraph of the contract and petitioner urges on us that such rejection gives rise to an inference of bad faith. In the absence of any evidence of recent usage or custom prevailing in respondent's business or in other business of like character classifying employees as enumerated in this section of the article, we are unable to say that its rejection inherently raises the inference of a lack of good faith. Section 3 of Article IV provided that the term "reporter" should include all editorial work including librarian and photographer, but not the office boy. Respondent insisted on the elimination of the librarian from this section, because combined with the position of confidential secretary to the editor. No inference of bad faith can be drawn from this rejection.

Section 6 of Article IV provided that salaries should be paid weekly and in United States currency. Respondent refused to agree to this section of the article and in its counter affidavit stated its payrolls are made on a semi-monthly basis and by check. The Guild offered to modify this section by providing "if payment is made in office vouchers or checks same shall be cashed same day" which respondent also rejected. No inference of bad faith may be drawn from this rejection or respondent's failure to agree to the original Article.

Article V provided that as of the date of the contract, the salary of any employee which is not increased by 10% through the application of the minimum salary provisions in Article IV (1) shall be increased ten per cent. Respondent rejected this article in its entirety. It was not compelled to contract for an increase in the salary of its employees and no inference of bad faith can be drawn from this rejection.

Article VI related to hours of employment and overtime pay which was agreed to by respondent except for the inclusion as to hours of work of the editor, news editor, assistant news editor, city editor, assistant city editors, society editor, Sunday editor and confidential secretaries, and the overtime provision for editorial employees, which it insisted was to be at its option.

In the absence of evidence of any general and continuous practice of respondent or that prevailing among those engaged in the conduct of similar business in regard to overtime pay for such employees, we cannot say the modification insisted on by respondent is within itself evidence from which an inference of bad faith might be drawn.

Article IX related to the payment of expenses incurred by employees in the discharge of their duties and included an item of not less than ten cents per mile to an employee for the use of his automobile. Respondent agreed to compensate editorial employees for expenses incurred when properly accounted for on expense accounts provided for that purpose, and at a rate mutually satisfactory to the employee and the management, which was the usual practice and custom of respondent in the conduct of its business.

██ Failure of respondent to agree to this article as originally drawn lacks probative weight of bad faith.

██ Article X related to the editorial and reportorial activities of respondent's employees outside working hours where such work was not done for publications in direct competition with respondent and related also to the sale to outsiders by employee photographers of pictures taken in the course of their duties, where such sales did not compete with respondent's publication. Respondent rejected this article upon the ground that whatever remuneration might be received by its employees from such sales of prints or pictures taken by them during working hours should belong to respondent. The objection is not trivial and cannot give dignity to an inference of bad faith.

Article XII related to discharges, and provided for two weeks' notice in advance to the Guild of such action in order for its standing committee to consult with the respondent and also provided that the Guild should designate a committee of its choosing to take up with respondent any matters affecting the relations of the employees and the employer. It also provided that employees should not be required to handle work for departments on strike and that the Guild could, at its discretion, handle work destined for striking departments providing such work was not passed into the striking departments until conclusion of the strike. It also provided respondent should not enter into any agreement with other publishers binding them not to offer or give work to employees of respondent.

██ Respondent rejected this article and offered as an alternative that where there was a disagreement between the respondent and its employees, the aggrieved party should set out in writing, addressed to the other party, the matter in dispute and that upon the creation of an issue, representatives of the Guild and respondent should meet and endeavor to agree, but where such agreement was not reached in ten days, the issue should be referred to a local joint board composed of two representatives of the Guild and two of respondent, the decision of which was final, but on failure to agree, the Board as constituted should select a fifth member to act as chairman, the issue to be presented to the five-man board, the decision of which was to be final. No inference of bad faith arises from respondent's rejection of this paragraph as originally written.

Article XIII dealt with leaves of absence, sick leave and vacations, and provided for space in a conspicuous place in the editorial rooms for a Guild bulletin board, and to permit the Unit Comptroller to collect dues on payday inside the plant. It also provided that the office boy should be paid not less than the minimum for the highest paid classification if he had worked at least one year in the lower classification and that he do no more than five hours' work a week in the higher classification.

██ Respondent rejected this article in its entirety. In its answer it offers to accept the provision for the bulletin board. From its rejection of this article as originally written no inference of bad faith can be drawn.

██ Article XV provided that an employee writing under his own signature should not be asked or expected to conform to the publisher's editorial policy at the expense of his personal convictions and that by-lines should not be used when the employee objected. We think no inference of bad faith can be drawn from the rejection of this Article by respondent.

██ The purpose of the National Labor Relations Act to deal with obstructions to commerce is controlling in its construction. The act is remedial in character and is to be broadly and liberally construed to accomplish its purpose. It does not compel agreements between employers and employees in all particulars. The parties to labor controversies are left free under the act to use their own economic strength in all lawful ways to obtain their respective advantages.

██ The method provided in the act, which it was believed would prevent the interruption of the flow of commerce arising from labor disputes, was to insure collective bargaining through untrammeled representation of employees by representatives of their own choice. The statute both grants rights and imposes duties and it confers by implication every power essential to the exercise of those rights or the performance of those duties. The intent of the act was to permit an employee to surrender to a collective agent his individual right to bargain with an employer, after which he no longer possesses this right during the life of the contract and the statute requires the employer to deal exclusively with the agent of his employees if one has been selected as provided.

█ Like every other contract, the relation of employer and employee arises out of a meeting of minds, with an offer on the part of one and an acceptance on the part of the other. No person can be caused, against his will, to enter into an employment contract and likewise no employer is compelled to employ another, consent to the relationship being imperative. The growth of collective bargaining as a method of avoiding labor controversies leading to strikes has become a fixed policy of the law and under the National Labor Relations Act the agreement must be reduced to a signed contract or a statement in writing which serves both as a recognition of the union with which the agreement is reached and as a permanent memorial. Heinz Company v. National Labor Relations Board, 311 U. S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309.

█ Every business enterprise makes an agreement either express or implied, with its employees relating to wages, hours and working conditions. Such agreements are often reduced to writing, or otherwise are found in the rules of the common law or statutory enactment of the Congress or the State Legislatures. Likewise, the contractual duty of the employee is found in agreements and also in the common and statutory laws of the United States and the respective states.

█ While the National Labor Relations Act in all instances does not compel an employer to enter into a contract with the statutory representative of his employees, it does require him to agree in writing with such agent concerning wages, hours and the established usages or customs prevailing in the conduct of his business in regard to such matters. The real question for decision here is, did the respondent refuse to contract with the Guild as to the terms either express or implied under which its employees of the unit found by the Board worked.

Article VII of the agreement provided that upon termination of employment or voluntary retirement, an employee should receive cash severance pay in a lump sum equal to three weeks' pay for each year of service, to be computed at the highest weekly rate of salary received by such employee, and that in the event of the death of an employee, the respondent should pay his beneficiary or estate an amount equal to the amount of severance pay to which he would have been entitled upon termination of employment. Respondent rejected this article in its entirety.

Respondent concedes that a custom or practice prevailed in its relationship with its employees in certain instances to grant discharge pay and death benefits, and that in the future it will probably continue such practices, but insists that it does not wish to be committed to any definite policy on the subject.

Article VIII of the agreement related to annual vacations with pay and vacation pay to discharged employees and pay to injured or sick employees and also notice to employees on leave called back to work in an emergency.

Respondent rejected this article in its entirety. It concedes that it followed the custom and practice of granting its employees paid vacations and sick leave. It also admits it proposes to continue these practices, but refuses to contract concerning them.

Article XI provided that any of respondent's employees entering the armed services of the United States, or any of its adjuncts, should be considered on leave of absence with severance pay rating and other rights unimpaired and on such employee's discharge from the Government service, he should be re-employed by respondent in a similar or same position. Respondent concedes that it proposed to follow this practice in each particular but did not wish to be bound by a contract on the subject.

Article XIV (1) provided that respondent should at all times maintain sanitary washroom facilities and provide healthful working conditions for its employees. Section (2) of this article provided that respondent would make available to the Guild its records with reference to the payment of social security taxes to the United States, to the unemployment compensation division of the State of Tennessee or any other agency or organization to which respondent makes payments for its employees. Respondent rejected this article in its entirety on the ground that it was voluntarily furnishing the washroom facilities and healthful working conditions and would continue to do so and that it was furnishing a bi-monthly statement to each of its employees showing the payments referred to on their accounts.

█ It will be noted that the questioned contract falls into two general classifications; one, the provisions requiring the respondent to agree to wages, hours and other conditions of employment, which did not exist between respondent and its employees

at the time these proceedings were instituted, nor exists at the present time. Over these the decree and the statute have no control; two, the provisions requiring respondent to agree to wages, hours and other conditions which did exist between it and its employees at the time these proceedings were instituted, and continued to the present time. As to these, the decree and statute control.

The National Labor Relations Act expressly provides that one of its purposes is "encouraging the practice and procedure of collective bargaining", 49 Stat. 449, § 1. The act also provides "that it shall be an unfair labor practice for an employer * * * to refuse to bargain collectively with the representatives of his employees", 49 Stat. 452, § 8. Neither the statute nor the present decree require respondent to make a collective contract, hiring individuals on any terms other than those which it may by unilateral action, determine, but as a matter of voluntary action and not as a result of the statute or decree, the respondent must contract with the duly designated representatives of its employees in relation to the wages, hours and working conditions it unilaterally lays down as prerequisite to their employment.

 If a majority of the employees in an appropriate unit of its business had not selected a representative, respondent would have been free to make any contract it desired with any one or any group establishing rates of pay and working conditions. Compare Virginian Railway Company v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789. Respondent's employees having statutorily selected a representative to act for them, it is compelled to deal with such representative as the sole agent of its employees of the appropriate unit as determined in the decree.

Respondent, by its admissions, shows it has refused to contract with the Newspaper Guild, the statutory representative of certain of its employees as to wages, hours and working conditions of such employees, which existed in its business at the time these proceedings were instituted. Such conduct is in violation of the spirit and purpose of the National Labor Relations Act.

This is but an application of the principle upon which the case of H. J. Heinz Co. v. National Labor Relations Board, supra, was decided. The bargaining agent for the employees demanding no more as to wages,

hours and other conditions, than what the employer has already granted and proposes to grant, the parties to the bargaining conference are in agreement, and being in agreement the employer who, by his refusal to honor the agreement with his signature, impairs the bargaining process and so can hardly be thought to have bargained in good faith.

"Bad faith" is a term of variable significance, hence of broad application. In its simplest form, the phrase implies breach of faith, wilful failure to respond to plain, well-understood statutory or contractual obligations. Giving the National Labor Relations Act its statutory import, which we are required to do, the respondent is guilty of bad faith in its failure to comply with the decree of this court. It is therefore ordered and decreed that respondent, within thirty days from the entry of the order pursuant to this opinion, offer to enter into a written agreement with the Knoxville Newspaper Guild as the exclusive bargaining representative of all of its employees who devote all, or a substantial portion, of their time to editorial or reportorial work, excluding therefrom clerical and supervisory employees, covering wages, hours, and working conditions prevailing in respondent's business at the time these proceedings were instituted and it may contract as to any other matters concerning wages, hours and working conditions which do not customarily prevail in the conduct of such business, but it is not compelled to do so.