Johannes R. KRAHMER, Plaintiff,

v.

William J. McCLAFFERTY, Jr., et al., Defendants.

Superior Court of Delaware, New Castle.

Feb. 11, 1972.

See also Del.Super., 282 A.2d 631.

---

**680**

Paul P. Welsh, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Ernest S. Wilson, Jr., Wilmington, for defendants.

## OPINION

O'HARA, Judge.

■ Plaintiff, a taxpayer of the City of Wilmington, has initiated this suit seeking a Writ of Mandamus to compel the defendants, members of The Council of the City of Wilmington ("Council"), to enact an annual operating budget ordinance in compliance with the Home Rule Charter of the City of Wilmington ("Charter"). Defendants have moved for judgment on the pleadings. For purposes of this motion the Court assumes, as it must, that all of the allegations of plaintiff's complaint are true.

The Charter, § 2-300, requires defendants to adopt, on or before May 31 of each year, an annual operating budget for the fiscal year beginning July 1 thereafter. § 2-300(2) specifically provides:

" . . . shall make appropriations to [specified branches of city government] . . . and for all other items which are to be met out of the revenue of the city. All appropriations shall be made in lump sum amounts and according to the following classes of expenditures for each office, department, board or commission: (a) personal services, (b) materials, supplies and equipment, (c) debt service, (d) such additional classes as the mayor shall recommend in his proposed annual budget ordinance."

In 1971 prior to the deadline Council passed an annual operating budget ordinance which, in addition to other items, provided for an appropriation of $310,564.-00 for "materials, supplies and equipment". The complaint alleges that in actual fact defendants intended to spend only about $49,510.00 for materials, supplies and equipment and the balance was intended for other purposes.

The complaint further contends that the defendants, members of the majority party, proposed by this device to, in effect, hold back an appropriated fund which Council could from time to time during the fiscal year appropriate to other uses for the purposes of gaining partisan political advantage.

Prior to the passage of the budget ordinance, Council was advised by the City Solicitor that it was not empowered to create such a "contingency fund", it not having been recommended by the Mayor. Disregarding such advice, defendants proceeded to the enactment of the ordinance including within it the questioned appropriation as indicated. Subsequent thereto the Mayor vetoed the appropriation alloted for materials, supplies and equipment and returned the ordinance to Council with a message pointing out what the Mayor designated as the illegality of the action of Council. The message of the Mayor was accompanied by a written opinion of the City Solicitor supporting the Mayor's conclusion. Thereafter the defendants overrode the Mayor's veto and passed the ordinance, including the questioned item, by a two-thirds vote. It is the contention of the complaint that in view of the circumstances of the passage of this ordinance that it was a knowing and deliberate falsehood on the part of Council.

■ The provisions of § 2-300(2) would seem to be a clear and unequivocal direction and authorization that Council had to make *all* its appropriations at once in the annual operating budget ordinance. This conclusion is reenforced by examination of § 2-301 which provides that "the Council

may not make any operating appropriations in addition to those included in the annual operating budget ordinance (with specified exceptions not here applicable)".

■■ The obligations imposed by § 2–300 are, generally speaking, mandatory and when violated may be enforced by mandamus. 15 McQuillen, Municipal Corporations (3rd Ed. 1970); 55 C.J.S. Mandamus § 139. The defendants herein rely, however, upon the general rule that a court may not inquire into the legislative motives of a legislative body. Defendants, applying this general rule, contend that the ordinance provision itself is valid on its face and that plaintiff does not dispute this but simply contends that the motives behind the passage of the ordinance, which do not appear on its face, were invalid. Defendants rely heavily upon the decision in Klaw v. Pau-Mar Construction Company, 11 Terry 487, 135 A.2d 123 (1957) and McQuail v. Shell Oil Company, 40 Del.Ch. 410, 183 A.2d 581 (1962). In both of these decisions, involving zoning questions, our Delaware Courts have indicated that they "will not inquire into the motives of members of a municipal legislative body in order to determine the validity of an ordinance enacted by them within the scope of their admitted powers".

■ Balanced against these decisions is that of Piekarski v. Smith, 38 Del.Ch. 402, 153 A.2d 587 (1959). In the *Piekarski* case the Wilmington City Council had passed a resolution which was attacked on grounds of fraud and bad faith and the Court had the following to say with regard to both the general rule of law referred to hereinabove and the problem raised by allegations of fraud and bad faith:

"The legal basis for the contention that the resolution was adopted 'in bad faith' is found in an exception to the general rule that courts will not inquire into the motives of or inducements to legislators that may influence them in the passage of acts or resolutions. . .

The exception is that the validity of municipal ordinances or resolutions may be attacked if fraud or bad faith is proved. This rule is recognized in Delaware, although in none of the decided cases was any fraud or bad faith found."

The Court must here assume to be true plaintiff's contention that defendants were fully informed of the limitation of their Charter powers and deliberately set out to evade them and that in carrying out that evasion they deliberately enacted an ordinance that was not the truth. If either of these facts can be proved "fraud or bad faith" would be established.

■ Defendants, however, argue that "fraud or bad faith" means a conflict of interest, or that it can be shown only by an ordinance which is "void on its face" or that, as was stated in *Klaw*, supra, it is neither fraud nor bad faith when a member of a City Council votes for an ordinance for an illegal reason. In *Klaw* the factual setting involved a zoning change voted upon by Council members who thought that revenue for the City would result. There was no indication in the *Klaw* case that the councilmen realized that they were acting improperly or that they had knowingly attempted to hide an illegal purpose by passage of an ordinance falsifying the factual situation.

Such circumstances were also absent in LaRue v. East Brunswick, 68 N.J.Super. 435, 172 A.2d 691 (1961) relied upon by defendants in their argument that "fraud or bad faith" means, at most, "conflict of interest". In the *LaRue* case the problem was whether fraud or self-interest could be inferred from otherwise innocent circumstances. Self-interest cases cited in the *LaRue* decision is simply an effort to show by contrast how "nebulous and highly speculative" was the showing of self-interest in *LaRue*, relied upon by plaintiffs. This Court does not find that the *LaRue* decision supports the contention that self-interest alone must be established before "fraud or bad faith" can be established.

To thus limit the powers of the Court in dealing with human misconduct would be an artificial limitation on the general powers of the judiciary to cope with wrongful action on the part of public officials.

There are many instances wherein "bad faith" has been construed by the courts in terms other than "conflict of interest". In Copeland v. Dunehoo, 36 Ga.App. 817, 138 S.E. 267 (1927) in an action involving a statute authorizing punitive damages under an officer's bond, the Court determined that "any arbitrary omission by the officer to do that which is required of him by law, or any conscious disregard of the limitations upon his authority, would amount to bad faith . . . "; Cornell v. Mason, 46 Idaho 112, 268 P. 8 (1928) holds that bad faith may "involve merely the absence of a proper motive", or "a conscious and willful neglect of duty, not prompted by any justifiable motive"; National Labor Relations Board v. Knoxville Pub. Co., 124 F.2d 875 (Ct. of Appeals, 6th Cir. 1942) found bad faith in a "wilful failure to respond to plain, well-understood statutory or contractual obligations".

A statement of the better point of view with respect to the necessity of good faith in the passage of legislation is found in 5 McQuillen, Municipal Corporations, § 15.23 (3rd Ed. 1969):

"That an ordinance must be passed in good faith is a declaration often encountered in the cases. The meaning of the rule is that an ordinance must not be a guise or pretense to do what a municipal corporation is authorized to do when in truth it does, and is intended to do, what the municipal corporation cannot do. The enactment of an ordinance not in good faith is, in effect, an abuse of public power."

▮▮ ▮▮ With respect to defendants' argument that "bad faith" can only be shown if it is obvious on the face of the ordinance, defendants rely to a large extent upon the authority of McQuillen and the cases cited in that authority. For example, it is stated in 5 McQuillen, Municipal Corporations, § 16.91 (3rd Ed. 1969) that:

"[I]t is a broad rule that an ordinance that is a sham because it purports to do something that a municipal corporation cannot do, under the guise or pretense of doing that which the municipal corporation is authorized to do, will be pronounced void by the courts when brought before them in a proper case. Judicial inquiry as to such an ordinance, however, does not, *according to some authority*, go beyond that which appears on the face of the ordinance." (Italics supplied).

If McQuillen here is indicating that a court should not go beyond what appears on the face of an ordinance, such theory is rejected, this Court believing that it would require a court to ignore artificial shams intended to conceal illegal purposes and would result in the giving of judicial protection to threaten rights. This Court adopts what it considers the better rule stated in In Re Twenty-First St., 196 Mo. 498, 96 S.W. 201 (1906):

"When we say that the validity of a city ordinance may be attacked on the ground of fraud in its procurement, we do not necessarily mean that actual bribery or corruption must be shown, but it is sufficient if the fraud charged is of that character that has been defined to be the willful doing of an unlawful act . . . .

. . . . What protection has a citizen for his constitutional rights, if the courts cannot look through a sham and see the truth, and how can the courts learn the truth if they must take the recitals in the ordinance as conclusive, and reject all evidence to show their untruth? What a reproach it would be to our system of jurisprudence and how humiliating would be the attitude of our courts if they were so powerless! But our law

is not so lame, and our courts are not so impotent. The courts in such case will hear the evidence and find the facts . . . ."

See also *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W. 2d 335 (1949); *Teacher Bldg. Co. v. City of Las Vegas*, 68 Nev. 307, 232 P.2d 119 (1951).

▆ The final argument of defendants is to the effect that plaintiff mistakenly relies upon the isolated language of § 2-300(2) requiring that Council must make all of its appropriations at once in the annual operating budget ordinance. Defendants argue that this narrow a restriction of Council's powers is not required by the language of subsection (2) and, in fact, is in conflict with the provisions of § 2-300(6) which reads as follows:

"The annual operating budget ordinance may be amended after its passage to authorize the transfer of items but the aggregate of the appropriations made by it may not be increased and transfer of budget items may not be made during the last four months of any fiscal year, except upon the recommendation of the mayor."

Defendants argue that subsection (6), by limiting Council's power to transfer budgetary items during the last four months of any fiscal year except upon the recommendation of the Mayor, is implicit recognition that Council has the power to make such transfers during the first eight months without such recommendation. The Court believes that defendants strain the language of subsection (6) to reach this conclusion. At most, subsection (6) merely *authorizes* a transfer of funds originally recommended by the executive. The purpose of subsection (6) is not to give broad powers to Council to manipulate the budget for improper purposes.

The Wilmington Charter is substantially copied from the Philadelphia Home Rule Charter, and the key provision of § 2–300 is identical in all material respects with the corresponding provision of the Philadelphia Charter. It is significant that in the annotations to the Philadelphia Home Rule Charter the following language is found with regard to the purpose of subsection (6):

"Subsection (6) is intended to serve as a check on the present practice of transferring items of the budget at the end of the fiscal year. Some agencies, finding at the end of the fiscal year that they have surplus funds left under certain items, have from time to time requested and received authorization from the Council for spending those surpluses for other purposes. This sub-section prohibits such transfers during the last four months of any fiscal year except upon the recommendation of the Mayor."

This Court believes that such definition of the purposes of subsection (6) is correct and that defendants' attempt to rely upon it to expand its otherwise restricted powers is incorrect.

The point of all this is that in subsection (2) Council is granted its specific powers with regard to the annual operating budget and, in fact, has clearly enunciated for it categories within which it may appropriate moneys. This subsection requires not only that money be appropriated for specific valid purposes but that the overall budget shall consist of *all* of the appropriations to be made. The only category within subsection (2) which would permit of something in the nature of an emergency or a contingency fund is found in sub-paragraph (d) of subsection (2) wherein appropriations may be made for "additional classes" not otherwise specifically mentioned, if the Mayor shall so recommend in his proposed annual budget ordinance. Subsection (6) merely recognizes that within this overall budget there are times and occasions when moneys alloted for a particular class and for a valid purpose therein may within the budget year be transferred to another class named in the budget. This can be done if Council

should determine this is appropriate, within the first eight months of the fiscal year and if Council and the Mayor together deem it appropriate within the last four months of the fiscal year. In this effort to control budgetary juggling but at the same time permitting some leeway, this Charter provision is hardly intended as a contradiction of the mandatory requirements of subsection (2).

For the reasons herein stated this Court concludes that the plaintiff has alleged a sufficient factual basis which, if established, would form the basis for the issuance of the Writ of Mandamus requested. Having reached this conclusion it follows that defendants' motion for a judgment on the pleadings must be denied.

It is so ordered.