214

Louis A. Drexler,

*vs.*

The Commissioners of The Town of Bethany Beach, a municipal corporation of the State of Delaware, and George H. Townsend, William P. Short, Henry M. Evans, Allie F. Evans, George Trimble, William M. Errett and Roger I. Addy, Commissioners.

*New Castle, July* 31, 1926.

*Frank M. Jones*, for complainant.

*James M. Tunnell*, for defendants.

THE CHANCELLOR. The lot in question was acquired by the town of Bethany Beach in 1915 and a building was erected thereon which has since been used as a town hall by the commissioners and as an assembly hall in which the residents may gather for the purpose of meetings and entertainments of various kinds. Some time after the building was erected a small electric light plant was installed under the building from which illuminating current is supplied to the community. The lot and building cost $2,700 and was paid for from the proceeds of a municipal bond issue. The bonds were authorized by a general provision of the town charter which does not undertake to limit the purpose for which the proceeds may be used.

The deed conveying to the town its title to the lot purports to convey in fee simple and without restriction or limitation.

The town commissioners adopted the following resolution on February 6, 1926:

"Whereas, the town of Bethany Beach cannot at present afford the expense and maintenance of a town assembly hall, and whereas offers have been received for the purchase of such property, therefore,

"Be it Resolved: That the Commissioners hereby authorize and direct their Chairman to execute a deed for the aforesaid property, for the highest offers received and a consideration of not less than $2,250.00. The same to be offered for sale at auction on March 6, 1926."

Thereupon the property was advertised for sale at public auction. The advertisement notified prospective bidders that a condition would be imposed on the purchaser that the town's electric light plant now in the building and all additions thereto should remain in the building for two years and that the commissioners of the town and the ladies who desire to use the hall should be permitted to use the same for the space of two years.

A few days before the date of the sale the present bill was filed, and a restraining order issued. The solicitors for the parties have just recently filed their briefs which accounts for the delay in disposing of the present rule.

First. This has to do with the time and conditions of the proposed sale. There being no charge of fraud on the part of the

commissioners, the only controversy under this head is as to whether the commissioners have acted wisely in fixing the time and conditions. Inasmuch as this is a pure question of judgment, it falls within the discretion of the governing authorities for its determination. This court ought not to interfere with that discretion where no fraud or abuse is shown. *Taylor, et al., v. Smith, et al.,* 13 *Del. Ch.* 39, 115 *A.* 405.

Second. The second objection is that the town had no authority to acquire the title, that the deed to it was void as attempting an *ultra vires* conveyance, and therefore the town cannot attempt to sell and convey. This is a *non sequitur*. If the town had no power to acquire the real estate, I do not see why it should not be permitted to do the best it can in the way of undoing its unwarranted act and trying to recover as much as possible of the money it laid out. The purchaser may raise some question about the character of title the town can convey. But the complainant who is a resident and taxpayer certainly cannot be harmed by the attempted sale.

This contention about the *ultra vires* character of the acquisition of the property was made at the argument. The case presented by the bill is in conflict with the contention, for the bill alleges that the town is the owner of the real estate and rests the claim to injunctive relief upon the proposition, not that there was no power to acquire the title, but that there is no right on the part of the town to dispose of it. This is the only real question in the case and is disposed of under the third and last head.

Third. Has the town a right to dispose of the property?

The charter of the town contains no express grant of power either to acquire or to dispose of real estate. It authorizes the town to raise money by taxation "for the general purposes of said town," and "to use the money in the treasury of said town for the payment of current expenses of said town." It authorizes the issuance of bonds up to a certain limit, but does not define or restrict the purposes for which the bonds may be issued or their proceeds applied. The proceeds from bonds become of course money in the treasury and may be expended as such for current expenses. An issue of bonds made possible the purchase of the town hall either directly

by supplying bond proceeds or indirectly by releasing tax funds which would have been otherwise applied.

If there was no power to acquire the property in question, the sale ought not on that account alone to be interfered with for the reasons pointed out under the second point above referred to.

But the disposition of the rule cannot end with a consideration of that point, because in my view of the law the town had a right to acquire the property.

It is well settled in this State that a "municipal corporation has no power except by express legislative grant, or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them out." *Cutrona v. Mayor, etc., of Wilmington*, 14 *Del. Ch.* 434, 127 *A*. 421; *Coyle v. McIntire*, 7 *Houst.* 44, 30 *A*. 728, 40 *Am. St. Rep.* 109; *Gray v. Wilmington*, 2 *Marvel*, 257, 43 *A*. 94.

These incidental powers are sometimes referred to as inherent or, as expressed by Blackstone, "necessarily and inseparably incident to every corporation." Among such powers is the power to acquire and erect buildings for necessary municipal purposes. 3 *McQuillan, Municipal Corporations*, §1116; 28 *Cyc*. 605. The reference to McQuillan contains the following:

"So, unless the charter prohibits, a municipal corporation may erect a school house, it being within the scope of its general powers as a municipal corporation.

"The right to fix up a building for city or public purposes, and provide suitable accommodations for the transaction of the business of the city, is a necessary incident to the administration of every municipal government, without which it would be impossible to carry out the objects and purposes of the incorporation.

"Under the power to vote money for incidental expenses a town may build town houses for the accommodation of its meetings and rooms for its municipal officers, and install a steam heating plant."

Bethany Beach is a summer resort. Its population during the fall and winter months is very small, consisting of only a few families. During the summer its population grows to five or six hundred. A hall such as was acquired may with all reason be said to have been quite necessary for the accommodation of the corpora-

tion's needs and the convenience, comfort and entertainment of its summer population.

In *Rome v. McWilliams*, 67 *Ga.* 106, it was said that the erection of public buildings for the accommodation of the inhabitants and municipal authorities, such as town houses to assemble in and market houses for the sale of provisions, may be a proper town charge and may come within the fair meaning of the term "necessary expenses," for they may be essential to the comfort and convenience of the citizens and the due, safe and systematic administration of its government. See, also, *Wheelock, et al., v. City of Lowell, et al.*, 196 *Mass.* 220, 81 *N. E.* 977, 124 *Am. St. Rep.* 543, 12 *Ann. Cas.* 1109, and note therein; 3 *McQuillan, Municipal Corporations*, § 1117.

Bethany Beach had the charter power to spend the money derived from taxes for "the general purposes of said town," and "to use money in the treasury of said town for the payment of current expenses." These two provisions are found in separate sections of the charter. I read them together as conferring a general power to spend money from whatever source derived for the current expenses and general purposes of the town. This language, under the authorities just cited, is sufficient to support the idea of a statutory grant of power justifying an expenditure for the purchase and acquisition of the property in question, without taking into account any inherent or incidental power to that end which the authorities previously cited attribute to the corporation.

So that it follows that the town had power to acquire the property. But it is apparent that this power exists only because of the need and necessity for the municipal and community purposes which the hall satisfied. Unless the hall was reasonably needed for the town and its inhabitants, its purchase was unauthorized. The town authorities insofar as they could, stamped upon it the character of such need by acquiring it, unless indeed we are to indulge the unwarranted presumption that they committed the *ultra vires* act of acquiring property for which there was no legitimate municipal necessity. Now the town having thus emphatically impressed upon this property its character of public necessity and having devoted it to the use of the inhabitants who for over ten years have enjoyed it, it seems to me that the holding of it by the town must

be regarded as in trust and for the benefit of the inhabitants. If such is the case, all the authorities agree that the right to sell does not exist in the absence of an express grant of power from the Legislature. If the public had ceased to use the hall, if it had been abandoned, or if the sale were simply an incident in connection with the establishment of a new hall elsewhere, the case would be a different one. But such is not this case. Indeed the very terms of sale show that there is a continued need for the hall for at least two years, after which time the town and community may expect to find themselves entirely deprived of the facilities which the public moneys had bought and which had for a number of years been serving an accepted public need. The town commissioners cannot thus dispose of property which the circumstances show to have been in substance held by the town in trust for its people, unless the Legislature confers a power to that end.

As to the recital in the resolution that the town cannot afford to keep the hall, I pass it by at the present stage of the case. Fuller facts are necessary before weight, if any, is allowed to that alleged circumstance. The question of being able to afford to keep the hall may be simply one that turns on the rivalry of some other or new project which makes or will make a heavy demand on the town treasury and which may after all not be essential. On the present showing, the injunction as prayed ought to issue.

Let an order be entered accordingly.