ABEL KLAW, M. HARRY MILLER and CLARENCE FRAIM, Appellants, v. PAU-MAR CONSTRUCTION COMPANY, a Delaware corporation, Appellee.

(*October* 16, 1957.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Thomas Herlihy, Jr.,* for appellants.

*Harry Rubenstein* and *Howard M. Handelman* for appellee.

Supreme Court of the State of Delaware, No. 17, 1957.

WOLCOTT, J.:

This appeal seeks reversal of permission to the appellee to erect a 15-story apartment house at 2401 Pennsylvania Avenue, Wilmington, on the ground that the 1948 amendment to the Wilmington Building Zone Ordinance under which the permission was granted is invalid *in toto.*

The facts surrounding the enactment of the 1948 amendment are briefly set out. In July, 1948 the proposed amendment was recommended by the Wilmington Zoning Commission to the

Wilmington City Council. Basically, the proposal was that a new class of zone district, namely Restricted Apartment District, be established, and that certain Residence A and Residence B Districts be rezoned as Restricted Apartment Districts.

The City Council, thereupon, caused notice of the calling of a public hearing on the proposal to be published in a Wilmington newspaper three times, pursuant to the requirement of 22 *Del. C.* § 304. The public hearing was held as advertised on August 12, 1948, at which several interested property owners were present and voiced objections to the proposal. It is to be noted, however, that the appellants, who at the time were property owners in one of the proposed new zones did not appear at the hearing, nor did any property owner in that zone appear and voice any objection to the proposed amendment.

On August 22, 1948 the proposed amendment to the Building Zone Ordinance was given two readings before the City Council and was thereupon referred to the Law Committee of the Council. On September 2, 1948 the Law Committee reported back to the Council a substitute amendment reflecting several changes from the proposed amendment, as a result of objections expressed at the public hearing. The substitute amendment was thereupon given a final reading and passed the Council without a dissenting vote, one member being absent.

The matter then rested dormant until September 23, 1955 when the Building Inspector granted the appellee permission to erect the apartment house in question. The appellants then appeared in opposition and have carried the controversy, so far unsuccessfully, through the Wilmington Board of Adjustment, the Superior Court and ultimately to this Court in review of the Superior Court's affirmance of the granting of permission.

No point is made of the time lapse by the appellee but we note in passing that we are now asked to declare invalid a zoning ordinance finally adopted nine years ago, at the suit of parties who at that time were property owners, had notice of the proposed change, but took no steps in opposition. We also

note, though again no point is made of it, that the appellants allowed all but five days of the six-month appeal time to go by before docketing this appeal. We note the fact in passing, but draw no inference from it. Appellants, of course, have the right to take the full time, but we point out nevertheless that the constitutional six-month appeal time (which is now in process of being changed by the General Assembly) was not designed to be used as a device to delay enforcement of the judgments of the lower courts.

It is necessary to set forth the changes which the final enactment of 1948 made in the proposed ordinance, the substance of which was set forth in the notice of the public hearing, since appellants bottom one of their arguments upon those changes. Basically, those changes were two.

First, the proposed ordinance, as advertised, would have created Restricted Apartment Districts with the same bulk requirements for the use of lot area as were then permitted in a Residence A district. The Residence A district bulk requirement was that not more than 30% of the lot area could be occupied by buildings, with an additional 10% of lot area permitted to be used for open porches, accessory buildings, etc. As finally enacted, the 1948 amendment permitted the use of 40% of the lot area, with the additional 10%, in Restricted Apartment Districts.

Secondly, the proposed ordinance, as advertised, proposed the rezoning of certain areas of Wilmington to the new Restricted Apartment Districts. With respect to three of those districts, changes were made in the 1948 amendment from the proposed boundaries described in the published notice, which resulted in a constriction of the proposed districts. The precise boundaries are immaterial. It suffices to state that one district, within which the appellants' properties and the appellee's property are located, was constricted by the elimination of one block at the east end. A second proposed district, located across Brandywine Creek, not contiguous to the first district, was constricted by

the elimination of thirteen city blocks. And a third proposed district, separated from the first by a number of city blocks and the B & O Railroad tracks, was constricted by the elimination of seven city blocks.

Based upon these facts, and others which we will refer to in the course of our opinion upon a particular contention, the appellants contend that the 1948 amendment is invalid.

Appellants argue that the 1948 amendment is void because the provisions of 22 *Del. C.* § 304 requiring the advertising of notice of a public hearing on proposed amendments to Zoning Ordinances were not complied with. § 304 provides that no original or amendatory zoning regulation or district boundaries shall become effective until after the holding of a public hearing at which interested parties shall have an opportunity to be heard, and that at least 15 days' notice of such hearing shall be given by publishing such notice in a newspaper of general circulation in the municipality.

The appellants' contention under this point is that statutory notice of the changes from the originally advertised proposal was never given since the form in which the amendment was finally enacted was never advertised. The argument is based upon the two types of changes already referred to, *viz.*, the contraction of the area of certain of the proposed districts, and the change in the lot bulk requirements for Restricted Apartment Districts.

Upon the fact of the area contraction, the appellants make an argument based upon 22 *Del. C.* § 305 which provides that if 20% or more of the owners of lots within a proposed district or immediately adjacent thereto protest the proposed changes in the Zoning Ordinance, a proposed amendment shall be effective only if it receives the favorable vote of three-fourths of all of the members of the City Council.

We find it difficult to follow the argument that by lessening the area of the proposed district the property owners within that district have been misled to their disadvantage.

Apparently, the appellants have the view that in some way the lessening of the number of properties, the owners of which would have had standing to protest the change, has worked injury to them. It is, of course, possible to imagine a state of facts where such might be the case, as for example the change of a boundary in order to eliminate protesting property owners, and thus destroy an established protest by 20% of the owners, but this record is clear not only that 20% of the owners did not appear, but, actually, that *no* property owner within the proposed apartment district with which we are concerned appeared and protested the creation of the new zone. It is, therefore, quite apparent that the decrease in size of the district did not mislead these appellants for they did not see fit to appear to protest; nor could their failure to do so have been occasioned by the appearance of 20% of the other property owners, since no protesting property owner from this proposed district appeared at the hearing. The argument made might be of weight under circumstances which would amount to fraud by the City Coucil, but this record does not even suggest such a situation.

A further, and—it seems to us—complete answer to the contention is that, assuming a protest by 20% of the property owners, the only result of that protest would have been to require that the ordinance receive a favorable three-fourths majority vote of the City Council. In point of fact, the amendment received the unanimous vote of all members of Council present, there being at the time one absent out of a total membership of twelve.

With respect to the changes in the bulk requirements of the individual properties in the new restricted apartment district as finally adopted, the appellants' argument is that notice of the proposed change was never advertised and, therefore, 22 *Del. C.* § 304 was not complied with.

The advertisement stated that the bulk requirements for lots would be the same as those required for residence districts, *viz.*, permission to use 30% of the land area for a structure and

an additional 10% for porches, etc. Actually, the amendment as finally adopted authorized the use of 40% of the land area for structures and an additional 10% for porches, etc. However, the setback requirements imposed upon residence districts were not changed for restricted apartment districts in the amendment as finally adopted.

The position of the appellants comes to this. They contend that a proposed amendment to the Zoning Ordinance must be specifically described in the notice calling a meeting to consider it, and that no changes from the proposed amendment as advertised may be made without further advertisement.

22 *Del. C.* § 304 requires that no zoning regulations, either by way of an original enactment or by way of amendment to an original enactment, shall become effective until after a public hearing upon it, at which hearing interested property owners shall have an opportunity to be heard either in favor of or in opposition to the proposal, and that notice of the hearing be published at least 15 days before the time set. The only absolute requirement with respect to the notice to be given contained in § 304 is of "the time and place of such hearing". There is no provision in the section specifically requiring advance notice in detail of what the proposed regulations will accomplish.

We think the sole requirement of 22 *Del. C.* § 304 is what is specifically set forth, *viz.,* that it is proposed to amend the Zoning Ordinance in certain general aspects, and that at a certain time and place a public hearing will be held so that interested persons may appear and be heard either in support of or in opposition to the proposal. We have read the published notice of the hearing in this case and are of opinion that it complies with the law.

It is of course possible to conjur up a set of circumstances in which the final enactment would be so foreign to the original proposal of which notice had been given and a hearing held as to justify a court in setting the final enactment aside as in the

nature of a fraud on the public and a failure to make even token observance of 22 *Del. C.* § 304, but such is not this case.

The increase of the bulk requirement from 30% to 40% is not a change of such magnitude as to require the whole matter being commenced again. As a matter of fact, the requirement of the enabling law, that a hearing be held at which citizens may protest, implicitly contemplates that changes might be made in the original proposal as the result of such hearings. This, we think, is what actually happened and this, we think, is what the law contemplates shall happen. Our opinion in this respect is supported by authorities from other jurisdictions. *Cf. Town of Burlington v. Dunn,* 318 *Mass.* 216, 61 *N. E.* 2d 243, 168 *A. L. R.* 1181; *Walker v. Board of County Com'rs,* 208 *Md.* 72, 116 *A.* 2d 393; *Ciaffone v. Community Shopping Corp.,* 195 *Va.* 41, 77 *S. E.* 2d 817, 39 *A. L. R.* 2d 757; *City of Corpus Christi v. Jones, Tex. Civ. App.,* 144 *S. W.* 2d 388.

Appellants cite one case in support of their argument, *Shultz v. City of Philadelphia,* 385 *Pa.* 79, 122 *A.* 2d 279. We think, however, the case is not authority for their position. In that case a municipal ordinance, amending the municipal charter, deleting from a general prohibition against political activity the employees of the office of the Mayor, was invalidated. The ordinance had been advertised as an ordinance to exempt *all* city employees from the effect of an existing ordinance prohibiting political activity by city employees. A public hearing was held upon the advertised proposal. The ordinance, as finally enacted, however, exempted only the employees of the Mayor's office. The changed ordinance was invalidated because it destroyed uniformity among city offices, and for the further reason that the granting of special privileges and immunities was illegal. It is apparent to us, even if the *Shultz* case had been decided solely upon the basis of the variance between the originally advertised proposed ordinance, and the final enactment, that that variance was in fact so great as to destroy the very nature and purpose of the proposed ordinance. The same

cannot be said for an increase of 10% in bulk requirements for use of land area.

The second point made by appellants is that the Superior Court committed error in rejecting by a pre-trial order a certain offer of proof made by appellants. The offer of proof was the testimony of certain members of the City Council of 1948 to the effect that they voted for the amendment to the Zoning Ordinance solely for the purpose of raising additional revenue for the city.

Appellants argue that 22 *Del. C.* § 303 requires that municipalities enacting Zoning Ordinances and amendments thereto do so for certain specified purposes and in accordance with a comprehensive plan designed, generally speaking, to promote the public health, welfare and safety. They point out that § 303 does not list among these purposes the raising of additional city revenue.

It is argued that the proffered proof was not intended primarily to show the motives of the members of City Council who voted for the amendment, but was to demonstrate that the ordinance had not been adopted in furtherance of any of the purposes permitted by 22 *Del. C.* § 303.

We think the rejection of the tendered proof was not error. The general rule is well established that courts will not inquire into the motives of members of a municipal legislative body in order to determine the validity of an ordinance enacted by them within the scope of their admitted powers. *McQuillin, Municipal Corporations* (3rd Ed.) § 20.09; 62 *C. J. S. Municipal Corporations* § 200; 37 *Am. Jur., Municipal Corporations* § 182. This rule is followed by Delaware courts. *Drexler v. Commissioners of Town of Bethany Beach,* 15 *Del. Ch.* 214, 135 *A.* 484; *Lynch v. Town Council of Georgetown,* 21 *Del. Ch.* 25, 180 *A.* 594. Courts inquire into the motives of municipal legislators acting within their powers only when there is a showing of bad faith or fraud. *Cf. Annotation,* 22 *A. L. R.* 1517. There is no

showing, or indeed any attempt to show, in this case that the 1948 amendment was fraud on the public, or was enacted in bad faith.

If the theory of appellants is that 22 *Del. C.* § 303 requires the Council to make factual findings of some public purpose to be served as the basis for their subsequent official act the tendered evidence of motive would still be inadmissible for two reasons. First, there is no showing of fraud or bad faith, and, second, the ordinance on its face fits within the general purposes laid down by § 303. Having received the approval of the legislative body of the municipality designated by the statute to act, the courts will not thereafter pass upon the wisdom of its judgment. *Taylor v. Smith,* 13 *Del. Ch.* 39, 115 *A.* 405.

Finally, appellants argue that the 1948 amendment is invalid because it did not receive the number of readings required by the Charter of Wilmington (1942 *R. C. Wilmington,* § 42). The facts are that the proposed ordinance received two readings before the City Council, was referred to the Law Committee of that body, and that, thereafter, a substitute ordinance, containing the changes heretofore set out, was reported back to the Council, received a final reading and was thereupon enacted.

The argument is subject to a short answer. It is common legislative practice to amend proposed bills and ordinances before they are finally enacted into law and it has never been considered that an amendment, or substitute as in this case, results in the introduction of an entirely new proposal. Particularly is this so when, as in this case, the changes, as we have pointed out, were not of such significance as to be anything but minor in nature.

The judgment below is affirmed.