In the Matter of BERNARDINE JOYNT et al., Appellants, against ALBERT KING et al., Constituting the Zoning Board of Appeals of the Town of Cicero, County of Onondaga, et al., Respondents.

Fourth Department, July 10, 1958.

*Francis R. Belge* for appellants.

*Stewart E. De Vaul* for respondents.

HALPERN, J. The petitioners-appellants filed a double-barrelled petition with the Zoning Board of Appeals of the Town of Cicero, requesting that a variance be granted authoriz-

ing the petitioners to use premises, located in a residential or "open land" district, as a junk yard or, in the alternative, that the board issue a certificate of occupancy for an existing nonconforming use covering the premises, recognizing the right of the petitioners to continue to use the premises for the purpose specified. The board held a hearing on public notice. Upon the hearing, the petitioners withdrew their request for a variance and relied wholly upon their claim that the premises had been used as a junk yard prior to the adoption of the ordinance.

Upon the conclusion of the hearing, the board denied the application for a certificate of occupancy for an existing nonconforming use. Thereafter, a proceeding was brought under article 78 of the Civil Practice Act to review the action of the board. The proceeding was dismissed by the Special Term and this appeal followed.

The zoning ordinance of the Town of Cicero expressly allows the continuance of existing nonconforming uses, so we need not concern ourselves with the question of whether the continuance of the alleged pre-existing use is a matter of constitutional right under the circumstances of this case (cf. *People* v. *Miller,* 304 N. Y. 105; *Matter of Harbison* v. *City of Buffalo,* 4 N Y 2d 553). The ordinance does not contain any express provision for the granting of a certificate of occupancy attesting to the existence of a nonconforming use but the board and the other parties have apparently construed the general provisions of the ordinance dealing with certificates of occupancy as authorizing the issuance of such a certificate in the case of a nonconforming use. Under this construction, the board had the authority, in passing upon an application for a certificate of occupancy, to determine whether a nonconforming use had been in existence prior to the adoption of the ordinance and whether it had been continued since that time (*Matter of Dempsey* v. *Koehler,* 257 App. Div. 825, affd. 282 N. Y. 571; *Matter of Flanagan* v. *Zoning Bd. of Appeals,* 2 Misc 2d 922; cf. *Matter of Caponi* v. *Walsh,* 228 App. Div. 86; *Matter of Caponi* v. *Walsh,* 232 App. Div. 777).

According to the petitioners' proof, the petitioners entered into a contract for the purchase of the premises some time prior to March 1, 1952; the purchase was closed on June 6, 1952, but the petitioners had gone into possession on March 1, 1952, with the permission of the vendor. Ever since that date, according to the petitioners' claim, they have used the premises for the storage and sale of junked automobiles and parts.

The zoning ordinance was adopted April 8, 1952, forbidding the maintenance of a junk yard in any district other than an industrial district and, even in an industrial district, requiring a special permit for such use by the Zoning Board of Appeals.

On September 19, 1957, the petitioners entered into a contract for the sale of the premises, conditioned upon their obtaining either a variance permitting the continued use of the property as a junk yard or a certificate of occupancy showing that the premises had been used as a junk yard prior to the date of the adoption of the ordinance. The petitioners accordingly applied informally to the zoning officer for a certificate of occupancy but he declined to issue such a certificate and the petitioners thereupon filed their petition with the Zoning Board of Appeals.

Upon the hearing before the board, one of the petitioners testified that she had started to use the premises for the storage of junked automobiles and the sale of automobile parts in March, 1952. She testified that ever since that time she had had from 25 to 60 junked automobiles on the premises. The testimony of the petitioner as to the time when she had commenced to use the premises in this way was not contradicted; only her estimate of the number of automobiles upon the premises was challenged. The chairman of the board asked the petitioner, who had testified to sales of junk parts in March, 1952, to produce documentary evidence to corroborate her claim. She responded that she had some " but not with me ". Without awaiting the submission of any additional evidence, the board on the following day denied the petition for " lack of evidence that this property was in use as storage and sale of used cars and parts prior to the adoption of the Zoning Ordinance ".

Shortly after the decision was handed down, the petitioners submitted to the board an affidavit by a customer who stated that he had purchased automobile parts from the petitioners on the premises during the first week of March, 1952. This affidavit was also submitted to the court upon the return day of the review proceeding. The attorney for the board submitted to the court, together with its answer and return, an affidavit of a neighbor to the effect that used cars had not been stored upon the property until February, 1956. He also submitted an affidavit by the chairman of the board that, prior to the adoption of the ordinance, he had inspected all the property in the town of Cicero personally " for the purpose of compiling data for a map showing the existing properties being operated not in conformance with the newly proposed statutes "; and

that, upon the occasion of his inspection of the petitioner's premises, he had "observed no used or junk cars" and had seen "no other indications that said property was being operated as a junk yard".

The board also submitted an affidavit by the zoning officer of the town that he had made routine inspections during the period of 1953 to 1957, and that on no occasion had he "observed any used or junk cars stored on the lands" of the petitioners. This affidavit presumably was intended to demonstrate that, if there had been any nonconforming use prior to the adoption of the ordinance, it had been abandoned thereafter.

The petitioners requested the Special Term to hold a hearing to enable them to meet the new matters submitted to the court by the board but the Justice presiding declined to do so.

In our opinion, the requested hearing should have been granted by the Special Term. The procedure upon the review of decisions of zoning boards is quite different from that upon the review of administrative agencies generally. In recognition of "the rather informal procedure" before zoning boards, the Legislature has provided "a further and more formal and judicial review by the Supreme Court * * * in some circumstances" (*People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 N. Y. 73, 80). Subdivision 7 of section 267 of the Town Law specifically authorizes the court to "take evidence or appoint a referee to take such evidence as it may direct and report the same with his findings of fact and conclusions of law". This power may be used by the court in any case in which "it shall appear that testimony is necessary for the proper disposition of the matter". It may be used whenever the court finds that further proof is necessary to clarify or supplement the evidence before the board, in order to enable it to determine whether the board's decision was arbitrary.

In this respect, a proceeding to review a zoning board resembles a proceeding in the nature of mandamus to review a determination made by an administrative agency without a hearing, rather than a proceeding in the nature of certiorari to review a determination made after a formal quasi-judicial hearing. In the latter case, the review is limited to the record before the agency but, under the statute, a review of a zoning board is not so limited if, in the court's judgment, further proof should be received.

This was an appropriate case for the exercise of the court's power to take additional proof. The hearing before the Zoning Board of Appeals was extremely informal; the petitioners apparently expected to have an opportunity to submit additional

proof but the board did not so understand it and went ahead with its decision at once. When the case came into court, both sides apparently felt the need for bolstering their respective claims with additional proof. As a matter of fact, without the new proof contained in the affidavits submitted by the board, there was no evidence in the case contradicting the petitioners' testimony as to a pre-existing use. The opinion of the Special Term indicates that it regarded the new matter as of controlling importance. In this situation, the court should have held a hearing and allowed the petitioners to introduce evidence to meet the new matter. The court should not have undertaken to pass upon the controversy upon the basis of affidavits; the statute provides for the taking of evidence, not for the receipt of affidavits, when additional proof is found to be necessary (cf. *Matter of Arcuri* v. *Macduff*, 286 App. Div. 17, 23 and the authorities there cited).

There is an additional reason in this case for the granting of a hearing at Special Term. It is apparent from the affidavit submitted by the chairman of the Zoning Board of Appeals that he had relied upon his personal knowledge in arriving at his determination. It is well settled that it is permissible for the members of a zoning board of appeals to use their personal knowledge in making their decision but they are required to make a full disclosure in their return of the facts within their personal knowledge of which they took account, unless the facts had been "otherwise disclosed" (*Matter of Community Synagogue* v. *Bates*, 1 N Y 2d 445, 454; see, also, *Matter of Crossroads Recreation* v. *Broz*, 4 N Y 2d 39; *People ex rel. Fordham Manor Ref. Church* v. *Walsh*, 244 N. Y. 280; *Matter of Gilbert* v. *Stevens*, 284 App. Div. 1016). We may, for the purpose of this case, accept the affidavit of the chairman filed with the return as a compliance with this requirement but, in view of the fact that the disclosures contained in the affidavit were not made until the judicial proceeding had been brought, elementary principles of fair play required that the defeated party be given an opportunity to challenge the new matter and to offer countervailing evidence at a hearing in court.

Of course, even in a case in which additional proof is taken in court, the ultimate issue to be decided is still whether the action of the board was arbitrary or capricious. The additional proof is received only as an aid to the court in deciding that issue; the court is not authorized to try the case *de novo* (*People ex rel. Hudson-Harlem Co.* v. *Walker*, 282 N. Y. 400). "When the whole case comes to be decided upon the new

testimony and the old, the court, even then, is not to put itself in the position of the Board '' (*People ex rel. St. Albans-Springfield Corp.* v. *Connell,* 257 N. Y. 73, 81, *supra*). This is true, even in a case like the present one, which does not involve any element of discretion or the exercise of administrative judgment as to a matter of degree, but only a clean-cut question of fact as to the existence or nonexistence of a prior nonconforming use. This is the type of question which is ordinarily decided by the courts in an action for a declaratory judgment or for an injunction or in a criminal prosecution brought to enforce the zoning ordinance, but the petitioners elected to apply to the board for a decision of the question instead of seeking relief in the courts in the first instance. Hence they will be bound by the decision of the board, unless it is ultimately found, upon all the evidence, that the decision was arbitrary or capricious.

The order of Special Term should be reversed and the matter remitted to the Special Term for the holding of a hearing.

All concur, McCurn, P. J., not participating. Present— McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Order reversed, without costs, and matter remitted to the Special Term for further proceedings not inconsistent with the opinion.