177 A.2d 785 (1962)
John W. DUKES, Louise H. Dukes, Edna H. W. Dukes, Howard Charleston, Beulah Charleston, James L. Dickinson, Betty Dickinson, John H. McQuail, Helen McQuail and James A. Staats, Plaintiffs,
v.
SHELL OIL COMPANY, a Delaware corporation, Joseph S. Dayton, Harry H. Lambert, and Harry B. Roberts, Jr., constituting the Levy Court of New Castle County; and Bayard A. Vandergrift, William R. Manning, John F. Porter, Charles C. Gammons, and Harvey G. Cole, constituting the New Castle County Zoning Commission and Grey M. Budd, Frances K. Budd, Edward R. Cordery, Lucy C. Cordery, Mary C. Derrickson, Lone Manor Farms, Inc., a Delaware corporation, Harry W. Lynch, Jr., Mary T. Lynch, Ruth F. Vogel, Susanna C. Wallace, Augustus E. Sheats, Elizabeth S. Sheats, Daniel C. Casapulla, Dorothy L. Casapulla, Nolan B. Williams, Meta Williams, Freeman Segars, Ruby B. Segars, Joseph A. Krejci, William H. Brady, Jr., Edith F. Brady, Michael Kitschik and Elena Kitschik, Defendants.
Court of Chancery of Delaware, New Castle.
January 19, 1962.
*787 William Prickett, Jr., of Prickett, Prickett & Tybout, Wilmington, for plaintiffs.
Edmund N. Carpenter, II, and Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for Shell Oil Co.
Clarence W. Taylor and Robert C. O'Hora, Wilmington, for Levy Court of New Castle County and New Castle County Zoning Commission.
William F. Lynch, II, of Morris, James, Hitchens & Williams, Wilmington, for certain individual defendants.
Clair J. Killoran, of Killoran & Van Brunt, Wilmington, for certain individual defendants.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, for defendant Ruth F. Vogel.
Joseph Donald Craven, Wilmington, Delaware, for defendant Joseph A. Krejci.
SHORT, Vice Chancellor.
Plaintiffs seek a decree of this court avoiding the action of the New Castle County Zoning Commission and the Levy Court *788 of New Castle County in rezoning certain parcels of land in Blackbird Hundred, New Castle County, Delaware, from the R-2 (Agricultural and General Purposes) classification to the M-3 (Heavy Industry) classification, and an injunction restraining the defendants from using said parcels of land for any purpose in violation of the R-2 classification. Pursuant to an act of the Legislature, 48 Del.Laws, Ch. 321, now Ch. 26 of Title 9, Del.C., the Levy Court of New Castle County, in about the year 1954, adopted a zoning plan and regulations for those portions of the county lying outside of incorporated municipalities. With certain minor exceptions, not here important, the whole of Blackbird Hundred was zoned in the R-2 classification. The Zoning Code adopted by the Levy Court of New Castle County defined the R-2 classification as follows:
"While R-2 districts are designated as one of the R districts, they include large undeveloped areas for which the ultimate purpose cannot now be determined. It is expected that, as the development of New Castle County takes place, portions of these R-2 districts will be required for other uses. Requests for rezoning such portions as residential, commercial, or industrial districts will be studied and acted upon on their own merits, following procedures outlines in Article XX of this Code."
In the latter part of 1960 and early 1961, Shell Oil Company (hereinafter Shell) obtained options from the owners of fourteen parcels of land situate in the Deakyneville area of Blackbird Hundred to purchase such lands with a view to constructing and operating a petroleum refinery and for related petro-chemical uses. The options thus acquired covered lands totalling 3,345 acres, more or less. This acreage comprised two large non-contiguous, irregular shaped parcels. Plaintiffs, or one or more of them, own lands between the two parcels, or in the "corridor", as plaintiffs describe the intervening lands.
On May 5, 1961 Shell and the owners filed a petition with the New Castle County Zoning Commission to rezone all of the optioned lands from the R-2 classification to the M-3 classification. On May 24, 1961 a hearing was held by the Zoning Commission pursuant to the statutory mandate. Following the hearing the commission reserved its decision for a period of thirty days in order to provide members of the public an opportunity to express their views. The majority of the members of the commission who participated in the hearing concluded that all of the lands mentioned in the petition should be rezoned as requested. The recommendations of the Zoning Commission were then delivered to the Levy Court of New Castle County which proceeded to a hearing on August 8, 1961 as required by law. On August 29, 1961 the Levy Court passed a resolution by a two to one vote rezoning 2,625 acres of the lands covered by the petition filed with the Zoning Commission from the R-2 classification to the M-3 classification. The present complaint was filed on September 11, 1961. By stipulation the case made out by Count One of the complaint has been submitted to the court on the record made before the Zoning Commission and the Levy Court of New Castle County, together with depositions and other documents agreed upon by the parties.
Count Two of the complaint alleges causes of action anticipatory in nature. As to this count defendants have moved to dismiss for failure to state a claim upon which relief may be granted. The present opinion is not intended to dispose of such motion.
Paragraph 5 of the complaint sets forth the grounds upon which plaintiffs claim that the action of the Levy Court was invalid. This paragraph is as follows:
"5. The actions of the Levy Court and purported rezoning by the majority opinion and resolution were without authority in law or fact in that:

*789 "(a) The proceedings of the majority of the Levy Court were arbitrary and capricious and in violation of 9 Del. C. 2603.
"(b) The purported rezoning of 2,625 acres in a checkerboard pattern was flagrant spot rezoning of a larger area than necessary for the needs of Shell and was for the benefit of Shell and the owners to the detriment of the plaintiffs and the other residents of the area, the county and the State.
"(c) The two members of the Levy Court who voted for the rezoning resolutions failed to consult, confer and advise with one another and with the member who voted against the resolutions.
"(d) The two members of the Levy Court who voted for the rezoning resolutions imposed on the opponents of the rezoning including the plaintiffs, the burden of proof.
"(e) Members of the Levy Court or their representatives consulted privately with representatives of Shell and the owners in violation of 9 Del.C. 2611 and deprived the opponents of the rezoning including the plaintiffs, of due process of law.
"(f) There is no evidence to support the purported rezoning of 2,625 acres in a checkerboard pattern in the Deakyneville area.
"(g) The Levy Court has failed to make a zoning plan for Blackbird Hundred in violation of 9 Del.C. 2607."
It now appears that plaintiffs have abandoned the matters complained of in subparagraphs [c] and [g] of paragraph 5 of the complaint.
Before proceeding to a determination of the issues presented by the record and briefs of counsel, it should be observed that the hearings held before the Zoning Commission and the Levy Court of New Castle County were lengthy and exhaustive. This is evidenced by a transcript of the hearing before the Zoning Commission comprising 209 pages, and by the transcript of the hearing before the Levy Court of 259 pages. The record contains also, numerous briefs and exhibits which were before those bodies. In addition to this mass of material, several thousand letters were received by the Commission and the Levy Court relating to this subject. It also appears that the members of the Levy Court conferred with numerous persons both before and after the hearing with regard to the problem confronting them. Two of the Levy Court commissioners inspected the area involved before the hearing. Between the time of the hearing and the date of the rezoning resolution each of the members of the Levy Court reviewed the transcripts, recommendations of the Zoning Commission and the many documents involved. On August 24, 1961 the members of the Levy Court met for a period of approximately four hours, during which time they conferred with one another and with their attorneys with respect to their problem. It is evident from the record that the Levy Court commissioners devoted many hours of their time to a consideration of the numerous questions involved. Not only did they have the benefit of the views of members of the general public of New Castle County, but also the testimony of a number of experts in the zoning field and other areas related to the problems which were before them. In fact, it appears that at the conclusion of the hearing before the Levy Court it was agreed by all involved, including the attorney for the plaintiffs, that the entire subject had been exhausted. Under these circumstances it can hardly be contended that the members of the Levy Court of New Castle County did not give thorough consideration to the issues presented to them. It is also to be observed that nowhere, either in the complaint, in plaintiffs' brief or in the oral argument, is there any suggestion whatever of any improper motives which might have induced *790 the members of the Levy Court to act as they did.
The pertinent provisions of the New Castle County Zoning law, Ch. 26 of Title 9 Del.C., are in substance, as follows:
§ 2601 empowers the Levy Court to regulate, inter alia, "the uses of land for trade, industry, residence, recreation, public activities, water supply conservation, soil conservation, or other similar purposes," in New Castle County outside of incorporated municipalities.
§ 2602 empowers the Levy Court, for the purposes specified in § 2601, to divide New Castle County into districts or zones as it might determine and to regulate the uses of land within such districts.
§ 2603 provides that the regulations adopted by the Levy Court "shall be designated and adopted for the purpose of promoting the health, safety, morals, convenience, order, prosperity or welfare of the present and future inhabitants of this State, including, amongst other things, * * * promoting * * * such classification of land uses and distribution of land development and utilization as will tend to facilitate and provide adequate provisions for * * * recreation, soil fertility, food supply, protection of the tax base, securing economy in governmental expenditures, [and] fostering the State's agricultural and other industries." This section also provides that "[t]he regulations shall be made with reasonable consideration, among other things, of the character of the particular district involved, its peculiar suitability for particular uses, the conservation of property values and natural resources and the general and appropriate trend and character of land, building and population development."
§ 2604 provides for the appointment of the New Castle County Zoning Commission.
§ 2607 provides for the preparation by the Zoning Commission of a tentative zoning plan.
§ 2610 provides for the adoption of a zoning plan and regulations by the Levy Court.
§ 2611(a) empowers the Levy Court to make amendments or changes "with respect to the number, shape, boundary or area of any district or districts," the proposal for any such change to be first submitted to the Zoning Commission. Subsection (b) provides for a hearing by the Zoning Commission after notice specifying the nature of the proposed change and the place and times at which the text and map of the proposal may be examined. Subsection (c) provides for the transmittal of the report of the Zoning Commission to the Levy Court, that the Levy Court shall not be bound by the report of the Zoning Commission, and requires a public hearing to be held by the Levy Court.
Though of relatively recent origin, zoning laws and regulations are now uniformly recognized as proper subjects of legislative action. Their propriety stems from the right of the State, in the exercise of the police power, to protect the public health, safety and welfare. The legislative power is one which may be delegated to a municipal or other local governing body. And, when the local authority acts in accordance with the powers conferred it does so in its legislative capacity. Auditorium, Inc. v. Board of Adjustment, 8 Terry 373, 91 A.2d 528. Since zoning is within the exclusive power of the legislative arm of the government the court is without power to substitute its judgment for that of the zoning authority. Searles v. Darling, 7 Terry 263, 83 A. 2d 96. The wisdom or policy of the legislation is not open to judicial inquiry. The function of the court is then to determine whether or not the local authority has exceeded its statutory powers or has abused its discretion. Searles v. Darling, supra.
Plaintiffs concede that the Levy Court has the power to "rezone R-2 areas *791 in general and the lands which Shell has under option in particular." In this connection plaintiffs state in their brief: "The plaintiffs do not believe that any rezoning at all for Shell is sound in terms of the best interest of the County and its inhabitants as a whole but realize that this is a question of judgment which the General Assembly has, in its wisdom, entrusted to the Levy Court and therefore the plaintiffs can not urge this Court to hold as a matter of law that the Levy Court could not rezone any of the lands from R-2 to M-3. The plaintiffs' point is that the majority of Levy Court has not acted within the limited power granted to the Levy Court in zoning matters under the statute and therefore their present act is null and void." Plaintiffs' principal complaint seems to be that the rezoning ordinance adopted by the majority of the members of the Levy Court was not "in accordance with a comprehensive plan," from which, say the plaintiffs, it follows that the action of the Levy Court was arbitrary and capricious and resulted in spot zoning solely for the benefit of Shell. It is to be observed that, contrary to the provisions of zoning statutes in many of the States, Chapter 26 of Title 9 makes no reference to a comprehensive plan, either as to the adoption of the original zoning ordinance or as to subsequent changes therein. Defendants say that since the Legislature has not seen fit to expressly require that changes be made in accordance with a comprehensive plan, or other words of like import, the only standard by which the Levy Court is governed is that of promoting the general welfare or other specific objectives set forth in § 2603. Plaintiffs point to the express reference to a comprehensive plan in the resolution of the Levy Court adopting a code for the regulation, inter alia, of land uses in New Castle County. They also call attention to an opinion expressed by the Chief Attorney for the Levy Court to the effect that that body is empowered to rezone lands not included in a zoning petition if such rezoning is necessary to make a logical and sound zoning decision. That the Levy Court assumed this power is also evidenced by the fact that the legal notice advertising the public hearing expressed an intention to give consideration to the desirability of rezoning other properties in the vicinity and reserving the right to adopt such revisions "in order to preserve a coordinated map for New Castle County." In spite of the fact that no express mention is made in Chapter 26 of Title 9, Del.C. of a comprehensive plan, it is apparent that it was the legislative intent that zoning and rezoning was to be accomplished only after due consideration given to the public welfare. This necessarily contemplated that zoning should be carried out with some thought being given to the over-all needs of particular communities. Planning of some kind, whether comprehensive, general, or otherwise, is required. Of course, this does not mean that the Levy Court in acting upon a petition to rezone a particular tract of R-2 land must consider the advisability of rezoning all other land of the same classification in the County, or even in the Hundred. Their concern is with the immediate vicinity of the lands involved in the petition before them. Whether or not they have the power to rezone lands not included in a particular petition, or, assuming such power, whether they have by appropriate regulation or policy, chosen not to avail themselves thereof, any zoning change must be based upon a consideration of the general welfare and, a fortiori, a plan in furtherance of that welfare.
Plaintiffs argue that since Shell petitioned for the rezoning of far more land than it admittedly needed for constructing its proposed refinery, and the Levy Court did, in fact, rezone substantially all of the lands described in the petition, it necessarily follows that the majority of the members of the Levy Court gave no thought to planning for the area. Plaintiffs single out certain facts which they contend support their position. They call attention to an offer made by Shell to the Board of Game and Fish Commissioners to lease to the board, for a period of ten years, 1600 acres *792 of the lands then under consideration for rezoning. This offer, in writing, stated that Shell would have no immediate use for the acreage offered. Plaintiffs argue that in view of Shell's offer and representation the Levy Court should have, at least, lopped off 1600 acres from the lands which were the subject of the rezoning petition, and the reduction by the ordinance adopted of a mere 600 plus acres was without any foundation in fact and, therefore, arbitrary. The testimony discloses that the area known as Cedar Swamp, referred to in Shell's offer to the Board of Game and Fish Commissioners, was only required, for the present, as a source of water supply. In fact, its adaptability otherwise to industrial purposes, even in the future, is questionable. It appears that at both the hearing before the Zoning Commission and that before the Levy Court considerable concern was expressed by many citizens as to the effect of the proposed rezoning upon the Cedar Swamp section which was recognized as a prime wild life area. This was certainly a factor which the Levy Court could consider in relation to the public welfare. Coupled with Shell's admitted lack of need of the acreage, its questionable adaptability to industrial purposes, and the fact that its requirement as a water source could be as well effected by the R-2 as the M-3 classification, it was sufficient to warrant a denial to rezone the area involved. Whether or not 600 acres rather than 1600 acres should be lopped off the total area covered by the petition was a matter of wisdom and expediency reserved to the zoning authority. The selection of the figure of 600 acres was not so clearly arbitrary as to warrant the Court's striking down the ordinance.
Plaintiffs argument that the Levy Court should have rezoned only so much of the land as Shell required for the construction of a refinery hardly conforms to the contention that rezoning must be in accordance with a comprehensive plan. It is clear that the Levy Court concluded that the area under consideration was peculiarly adaptable to industrial uses. With this conclusion the Court is not at liberty to take issue. The fact that more land than was immediately required by the corporate petitioner was rezoned tends to show planning for the area rather than the contrary. The happenstance that all of the lands rezoned were owned, legally or equitably, by Shell is of little significance. I think it a fair assumption that the same circumstance is present in the great majority of applications for rezoning. For this reason, plaintiffs contention that the rezoning adopted gives Shell a monopoly in M-3 land in the area, thereby rendering it invalid, is without merit. The same argument could be made with respect to any zoning reclassification with the result that the zoning authority would be powerless to effect changes. The cases cited by plaintiffs (Ex parte White, 195 Cal. 516, 234 P. 396, and Wickham v. Becker, 96 Cal.App. 443, 274 P. 397) are not in point. In those cases restrictions imposed by the original zoning effectively barred any businesses other than those already established in the town. Moreover, as observed by defendants, zoning laws are not designed to restrict land ownership, but only land use.
Plaintiffs call attention to certain statements in the written opinion of the majority of the Levy Court. These statements pertain to the 600 acres which were not rezoned, to a finding by the majority that the area involved is prime industrial land as to which the primary question was whether or not the area should be industrialized by Shell or in some other fashion at a later time, and to the concern expressed by many citizens that the area sought to be rezoned was considerably larger than needed by Shell. Plaintiffs say that it is obvious from these statements that the majority of the Levy Court gave no thought to the matters which § 2603(b) requires them to consider. A similar contention was made before the Supreme Court in Klaw v. PauMar Construction Company, 11 Terry 487, 135 A.2d 123, where appellants argued that the trial court committed error in rejecting an offer of proof in the form of testimony *793 of certain members of the Wilmington City Council that they voted for a zoning amendment solely for the purpose of raising revenue for the city. It was contended that the statute (22 Del.C. § 303) "requires that municipalities enacting Zoning Ordinances and amendments thereto do so for certain specified purposes and in accordance with a comprehensive plan designed, generally speaking, to promote the public health, welfare and safety," and that the raising of additional revenue was not listed among these purposes. It was alleged that the proof offered was not to show motive, but to demonstrate that the amendment had not been adopted in furtherance of any purpose specified by the statute. The Court said:
"We think the rejection of the tendered proof was not error. The general rule is well established that courts will not inquire into the motives of members of a municipal legislative body in order to determine the validity of an ordinance enacted by them within the scope of their admitted powers. * * * This rule is followed by Delaware courts. * * * Courts inquire into the motives of municipal legislators acting within their powers only when there is a showing of bad faith or fraud. * * There is no showing, or indeed any attempt to show, in this case that the 1948 amendment was fraud on the public, or was enacted in bad faith.
"If the theory of appellants is that 22 Del.C. § 303 requires the Council to make factual findings of some public purpose to be served as the basis for their subsequent official act the tendered evidence of motive would still be inadmissible for two reasons. First, there is no showing of fraud or bad faith, and second, the ordinance on its face fits within the general purposes laid down by § 303. Having received the approval of the legislative body of the municipality designated by the statute to act, the courts will not thereafter pass upon the wisdom of its judgment."
The quoted language is not only dispositive of the contention under consideration, but also of plaintiffs' offer of proof, by way of depositions, of the motives of the majority of the Levy Court in adopting the rezoning. As to this offer, counsel attempts to distinguish the Klaw case from the present by pointing out that here the members of the Levy Court are parties to the action while in the Klaw case the members of City Council were not. He relies upon Benner v. Tribbitt, 190 Md. 6, 57 A.2d 346. The Benner case seems to support plaintiffs' contention. Assuming that it does, then it is contrary to the law in this state. See, Drexler v. Commissioners of Town of Bethany Beach, 15 Del.Ch. 214, 135 A. 484, cited by the Supreme Court in Klaw v. Pau-Mar Construction Company, supra, as in accord with the general rule as to the propriety of judicial inquiry into the motives of a legislative body. In the Drexler case the Town Commissioners were parties defendant as are the members of the Levy Court here. Nor is there any merit to plaintiffs' contention that in the Klaw case there was an attempt to collaterally attack an administrative decision. This was not the ground of the Supreme Court ruling. Defendants' objection to the testimony offered is sustained.
Plaintiffs argue that the majority decision is solely for the benefit of Shell and is, therefore, illegal and void. Of course, if the record sustained the premise of this argument the conclusion would be inescapable. But I do not believe that the record does so. First of all, there is a presumption of validity to be accorded to the action of the Levy Court. It is necessarily presumed that the majority of that body acted for the public welfare. Since there is generally no requirement that a legislative body make known the public purposes to be served as the basis for its action, and since the Levy Court is not expressly required to do so in matters of zoning, the court is at liberty to consider the purposes which might have induced the action complained of. If it appears that the rezoning involved has "some rational and necessary *794 connection with the peace, good order, health, safety, morals or general welfare of the community" the zoning change must be upheld. Papaioanu v. Commission of Rehoboth, 25 Del.Ch. 327, 20 A.2d 447. It is apparent from the record made before both the Levy Court and the Zoning Commission that there was before both bodies substantial testimony which related to the effect that rezoning would have upon the general welfare. For example, there was evidence calculated to show the effect upon unemployment in the county, the contribution, tax wise, of the proposed industry, and the adaptability of the areas under consideration to industrial purposes generally, and to heavy industry specifically. These, among others, were proper factors to be considered by the Zoning Commission and the Levy Court. That they did, in fact, give, consideration to these subjects is evidenced by the opinions of the majority of the members of both bodies. On the other hand, it is equally apparent that the majority in each case gave serious consideration to the possible disadvantages which might result from rezoning. The opinions reflect cognizance of the problems of water and air pollution and conservation of natural resources. Expert testimony, not only of the petitioner but of appropriate State agencies was in the record as to these subjects of concern. The problem of pollution was obviously resolved on the basis of such testimony and that of conservation by the considered judgment of the majority of the members of the Levy Court. The cases cited by plaintiffs as supporting this contention are inapposite. In each of them the zoning change singled out a small tract or lot for different treatment than the surrounding area. There was no relation between the change and the public welfare. Such reclassifications were properly condemned as illegal "spot zoning." It is to be observed that plaintiffs here allege that the change of classification approved by the Levy Court constitutes invalid spot zoning. Neither in their brief, nor in oral argument did plaintiffs dwell at any length upon this contention. While the term "spot zoning" may not necessarily be confined to small areas or lots, it is safe to say that the cases in which courts have struck down rezoning ordinances as spot zoning have involved single lots or small areas. In fact, the definitions of the term pronounced by many courts indicate its applicability only to such areas. See the exhaustive annotation in 51 A.L.R.2d 263. None of the cases there annotated apply the theory of illegal spot zoning where an area of considerable size is involved. Nor has independent research revealed such an instance. In any event, examination of the many so-called spot zoning cases indicates that the real test of validity of a reclassification is reasonableness and a tendency to further the general welfare. See 2 Metzenbaum, Law of Zoning, 1519.
Plaintiffs next contend that the decision of the majority of the Levy Court is arbitrary and capricious since it leaves a corridor between the areas rezoned and many irregular shaped captive lands contiguous thereto. This contention questions the wisdom of rezoning along property lines. There is no requirement in the law that a rezoning ordinance deal only with lands of particular shapes or sizes. On the contrary, 9 Del.C. § 2611 empowers the Levy Court to make changes "with respect to the number, shape, boundary or area of any district." Nor is there any requirement that lands sought to be rezoned must be contiguous. As a practical matter, the propriety of making changes along property lines is apparent. Assuming, as plaintiffs say, that the Levy Court has the power to rezone lands not included in the particular petition before them, a policy not to exercise such power is not indicative of an arbitrary abuse. Neither is the requirement that the petitioners be the owners, legal or equitable, of the lands described in the petition. In fact, such policies or requirements may rightly be said to be in harmony with, if not required by the procedural mandates of § 2611.
I conclude that the action of the Levy Court in rezoning 2625 acres of land in Blackbird Hundred from the R-2 to the *795 M-3 classification was not an arbitrary or capricious abuse of discretion, but was a reasonable exercise of the power to make zoning changes in furtherance of the public welfare.
But plaintiffs contend that in any event the rezoning complained of is invalid because (1) the decision of the majority of the Levy Court was based on matters outside the record, and (2) the Levy Court placed the burden of proof on the opponents of the rezoning.
It appears from the record that because of disagreement among the members of the Levy Court as to the acreage which should be rezoned, they instructed their attorneys to confer with Shell's attorney to determine whether Shell would accept rezoning of less acreage than that covered by the petition. The attorneys met on August 29, 1960. Later, on the same day, the Levy Court attorneys reported to the members of the Levy Court that Shell's attorney, while indicating he was not in a position to make any commitment, had advised them that he was sure that Shell would not be satisfied with any reduction in the acreage, with the possible exception of the approximate 600 acres of the Cedar Swamp area. Thereupon, the majority of the Levy Court made their decision. Plaintiffs say that the fact of this "secret" meeting, coupled with the Levy Court's failure to note it on the record, and the denial to plaintiffs of the opportunity to meet it is such unfair action as to taint the decision and render it null and void. This contention is founded upon the premise that the Levy Court was acting as a quasi-judicial or administrative body. The premise is, of course, erroneous. The Levy Court was acting in a legislative capacity. Auditorium Inc. v. Board of Adjustment, supra. Cases cited by plaintiffs which deal with the action of administrative bodies exercising quasi-judicial functions are not, therefore, strictly in point. In their reply brief, however, plaintiffs say that the principle of the cases cited applies equally to the action of a legislative body. The principle is thus stated in Giordano v. City Commission, 2 N. J. 585, 67 A.2d 454:
"No determination can be permitted to rest upon undisclosed findings or information dehors the record. If such could be the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the board, and due process would be flouted. The rights of the parties can only be protected, both in the trial tribunal and on review, by a full disclosure on the record of the facts relied upon for the board's findings."
See also, Joynt v. King, 6 A.D.2d 234, 176 N.Y.S.2d 776; Kempner v. Edison Township, 54 N.J.Super. 408, 149 A.2d 251. The applicability of this principle to legislative action is doubtful. See, Hlavati v. Board of Adjustment, 142 Conn. 659, 116 A. 2d 504; Fandel v. Board of Zoning Adjustment, 280 Mass. 195, 182 N.E. 343. In the latter case complaint was made that the board had inspected the premises following the public hearing and had thereafter received communications that "were read to the meeting" of the board at which action was taken. Rugg, C. J., speaking for the Supreme Judicial Court of Massachusetts, said:
"* * * The purpose of the statute would be thwarted if the members of the board could not utilize their individual knowledge and experience. * * * Manifestly, they may and probably ought in most instances to view the neighborhood affected. There is no statutory requirement that the board give a public hearing as to all knowledge touching the subject possessed by them, or all considerations moving them to action. Public interests are involved in such a proceeding and are entitled to consideration. It is not a matter concerning alone the petitioner for the change and those appearing *796 in opposition. The obligation resting upon the respondents touching the petition presented to them was to ascertain relevant facts and to apply the statute to them according to their best judgment, for the general welfare as well as for the interests of private parties."
But, assuming the applicability of the principle cited by plaintiffs, it does not necessarily follow that the action complained of renders the rezoning invalid. In United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821, the Supreme Court of the United States said:
"It is true that ordinarily an administrative agency will act appropriately, in a proceeding of this sort, upon the record presented and such matters as properly may receive its attention through `official notice.' It is also true that this Court, in appropriate instances, has limited the use of the latter implement in order to assure that the parties will not be deprived of a fair hearing. * * * But in doing so it has not undertaken to make a fetish of sticking squarely within the four corners of the specific record in administrative proceedings or of pinning down such agencies, with reference to fact determinations, even more rigidly than the courts in strictly judicial proceedings. On the contrary, in the one case as in the other, the mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result."
Though plaintiffs state in their brief that they were prejudiced by the failure of the Levy Court to disclose on the record the information privately received from Shell's attorney, it is difficult to see how any substantial prejudice resulted to them. They had had full opportunity to present their views at the public hearing, and had done so. The purpose of the conference was merely to determine whether the petitioner's interest would continue if a reduction was made. Its result was to reduce the acreage to be rezoned, which, if anything, was beneficial to plaintiffs. Moreover, assuming the applicability of the principle relied upon, the action of an administrative body will not be struck down where there is competent evidence in the record to support it. Utah Power & Light Co. v. Public Service Commission, 107 Utah 155, 152 P.2d 542. Plaintiff's assertion that the decision was based upon the undisclosed information is without foundation in fact for the majority had determined, before the conference, to grant rezoning of at least the major portion of the lands. It is to be observed that plaintiffs themselves, or one or more of them, engaged in conferences with one or more of the members of the Levy Court outside of the public hearing. This fact does not appear in the record of the Levy Court's proceedings. In view of this circumstance, the standing of the plaintiffs to raise the issue under discussion is questionable. In any event, while procedure of the type complained of is not recommended, it is not such as would warrant a holding that the rezoning was invalid.
Plaintiffs finally contend that the majority of the Levy Court placed the burden of proof on the opponents of rezoning contrary to the applicable provisions of 9 Del.C. § 2611(c), and that the decision is, therefore, invalid. Section 2611(c) provides, in part: "* * * In any event, the Levy Court shall not be bound by the report of the Zoning Commission." Plaintiffs point to the conclusion of the written opinion of the majority which states:
"In conclusion, we are constrained to continue to follow the practice of the Levy Court with respect to zoning petitions, which has been followed for some time, that is, to accept the recommendations of the Zoning Commission except in such instances as there are clear and compelling reasons to do otherwise."
*797 Plaintiffs say that this language demonstrates that the Levy Court required the opponents to present clear and convincing evidence of the impropriety of the Zoning Commission's recommendations, that the decision of the majority was, in effect, a holding that such evidence had not been produced, and that, therefore, the majority considered themselves bound by the recommendations. It is obvious from a reading of the chapter of the Code which pertains to zoning in New Castle County, 9 Del.C. Ch. 26, that the Legislature intended the Zoning Commission to serve an important function with respect to rezoning. Because of its express power to "make use of the expert advice and information" (9 Del.C. § 2605) and to "employ such experts [and] trained personnel" (9 Del.C. § 2606), the Commission was peculiarly adapted to make advisory findings and recommendations. By reason of these powers and its experience in the field of zoning the Commission's recommendations were not intended to be lightly regarded. Indeed, plaintiffs expressly recognize that the Levy Court must give consideration to these recommendations for, as they say, "otherwise the hearing before the Zoning Commission and its recommendations would be meaningless." Defendants say that since the statute does not provide what weight the Levy Court must give to such recommendations, that body is entitled to establish its own policy. Generally speaking, of course, the burden is on the proponent of the zoning reclassification to establish the need for rezoning. 101 C.J.S. Zoning § 363, p. 1206. But I do not believe that the record here shows that the burden was placed upon the opponents, in spite of the conclusory language of the majority opinion. In the first place, the provision of the statute as to the effect of the recommendations of the Zoning Commission was expressly called to the attention of the Levy Court by Shell's attorney when the public hearing began. Secondly, a reading of the entire opinion makes it clear that the decision of the majority was founded upon the record made before the Levy Court and the Zoning Commission, rather than upon the inability of the opponents to show the impropriety of the recommendations of the majority of the Zoning Commission. Then again, the action of the Levy Court itself shows that the majority did not consider themselves bound by the recommendations. Plaintiffs' contention that the Levy Court misplaced the burden of proof is without merit.
Courts have only a limited roll in reviewing zoning ordinances. As was said by the Supreme Court of New Jersey in Kozesnik v. Montgomery Township, 24 N.J. 154, 131 A.2d 1:
"The zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of legislative action is reviewable only at the polls. The judicial roll is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary or unreasonable."
The showing here made is not sufficient to meet this test. Accordingly, judgment is entered dismissing the first count of the complaint.
Order on notice.